[No. 25090-0-II.   Division Two.   January 26, 2001.]

TECHNICAL EMPLOYEES ASSOCIATION, *Respondent*, v. PUBLIC EMPLOYMENT RELATIONS COMMISSION, ET AL., *Appellants*.

---

*Martin S. Garfinkel* (of *Frank, Rosen, Freed, Garfinkel & Roberts, L.L.P.*); *Christine O. Gregoire, Attorney General,* and *Spencer W. Daniels, Assistant*; and *Norm Maleng, Prosecuting Attorney for King County,* and *Regina Cahan, Deputy*, for appellants.

*James M. Cline* (of *Cline & Emmal*), for respondent.

BRIDGEWATER, J. — The Technical Employees Association (TEA) sought to replace the incumbent unions for certain King County employees by filing five petitions with the Public Employees Relations Committee (PERC). PERC affirmed its Director's dismissal of the petitions on the grounds that TEA filed the petitions late. When TEA appealed to superior court, it failed to serve the Teamsters who had participated in the administrative proceeding. We hold that this failure deprived the superior court of jurisdiction to consider TEA's petition for judicial review. We reverse.

Since 1995, TEA has sought to become the official union representative of various King County employees, particularly former King County Department of Metropolitan Services (Metro) engineers. Some of these employees were already represented by the International Federation of Professional and Technical Employees (IFPTE) Local 17 and Teamsters Union Local 117.

Both IFPTE and the Teamsters had collective bargaining agreements with King County. IFPTE's agreement was effective through December 31, 1997. The Teamsters' agreement was effective through December 31, 1998. RCW 41.56.070 provides a "contract bar" to any party wishing to challenge the continuation of a valid collective bargaining agreement; it requires that such challenge be brought "not more than ninety nor less than sixty days prior to the expiration date of the agreement." *See also* WAC 391-25--030.[1]

On October 31, 1997, TEA sent a courier to PERC's office

---

[1] WAC 391-25-030 states: "Petition—Time for filing. In order to be timely filed: (1) Where there is a valid written and signed collective bargaining agreement in effect covering an appropriate bargaining unit which includes any or all of the employees to be affected by the petition, a petition must be filed during the period not more than ninety nor less than sixty days prior to the expiration date of the collective bargaining agreement, or after the expiration thereof."

with five "Petition[s] for Investigation of Question[s] Concerning Representation" (QCR).[2] In these petitions, TEA sought to supplant IFPTE and the Teamsters as the employee representative. TEA's courier did not arrive at the PERC office until after it had closed. Thus, the courier slid the petitions under the door. The cutoff date was Sunday, November 2. On Monday, November 3, the PERC office reopened and the staff filed the petitions, stamping them filed on that date.

PERC began an initial investigation into TEA's petitions. On April 17, 1998, PERC sent TEA a letter informing it that its petitions "appear[ed] to be untimely," and giving it 14 days "to show cause why [the petitions] should not be dismissed as untimely." Administrative R. at 162.

TEA responded with three main arguments.[3] PERC's Executive Director dismissed TEA's petitions, rejecting all three arguments. TEA petitioned PERC for review of this dismissal. PERC affirmed the Director's dismissal of TEA's petitions.

TEA petitioned the superior court for review. Although the Teamsters had been involved in the PERC proceedings, TEA did not serve its superior court petition or any other superior court document on the Teamsters. Thus, King County and IFPTE moved to dismiss TEA's petition for failure to invoke the court's jurisdiction under RCW 34.05.542(2), which requires service on "all parties of record" that were "allowed to intervene or participate as a party in the agency proceeding." Clerk's Papers at 208, 210. The Teamsters supported the motion by providing an affidavit from its legal counsel who asserted that TEA's petition for judicial review involved employees for which the Teamsters was the incumbent union. Counsel also confirmed that TEA had not served the Teamsters with the petition for judicial review.

---

[2] The fifth petition, involving the Teamsters, is not part of this appeal.

[3] We do not address the merits of TEA's arguments because TEA did not invoke superior court jurisdiction.

The superior court rejected the jurisdictional argument, holding that TEA's petition "was timely filed on all parties[.]" Clerk's Papers at 553.

On appeal, IFPTE and King County argue that the Teamsters was a "party" that participated in the challenged administrative action and therefore TEA was statutorily required to serve the Teamsters. Failing to do this, they argue, deprived the superior court of statutory jurisdiction to rule on TEA's petitions.

An appeal from an administrative tribunal invokes the appellate, rather than the general, jurisdiction of the superior court.[4] Acting in its appellate capacity, the superior court is of limited statutory jurisdiction, and a party seeking to properly invoke its jurisdiction must meet all statutory procedural requirements.[5] The procedural and jurisdictional requirements are set forth in RCW 34.05.542(2), which states that a "petition for judicial review of an [agency] order shall be filed with the court and served on the agency, the office of the attorney general, and all parties of record within thirty days after service of the final order." Service on all parties is a necessary condition of jurisdiction. *See Union Bay Pres. Coalition v. Cosmos Dev. & Admin. Corp.*[6] A party to agency proceedings, or party in a context so indicating is "[a] person named as a party to the agency proceeding or allowed to intervene or participate as a party in the agency proceeding."[7]

The court in *Den Beste v. State, Pollution Control Hearings Board*[8] analyzed the "participated as a party" language. There, the Department of Ecology (DOE) examined "groundwater applications." The Yakima Indian Nation participated in the administrative process; its representa-

---

[4] *Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 555, 958 P.2d 962 (1998); *Union Bay Pres. Coalition v. Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 617, 902 P.2d 1247 (1995).

[5] *Skagit Surveyors*, 135 Wn.2d at 555; *Fay v. N.W. Airlines*, 115 Wn.2d 194, 197, 796 P.2d 412 (1990).

[6] 127 Wn.2d 614, 617, 902 P.2d 1247 (1995).

[7] RCW 34.05.010(12)(b).

[8] 81 Wn. App. 330, 914 P.2d 144 (1996).

tives attended public meetings, met privately with DOE staff, and prepared literature for DOE concerning the applications.[9] But it did not formally intervene in the process. DOE ruled on the applications, but it failed to immediately send notice of its ruling to the Yakima Nation.

During a later administrative appeal, DOE argued that the Yakima Nation was not a "party" and was therefore not entitled to notice of the rulings. Although the superior court agreed, Division Three did not. Division Three noted that the Yakima Nation's "concern was expressed by its attending public and private meetings and by submitting written input to [DOE]."[10] After referencing RCW 34.05.010(12)'s "participated as a party" language, it held that "given its degree of participation, the Yakima Indian Nation was entitled to timely notice of the [DOE] decision."[11]

█ Here, the Teamsters was a participating party. PERC and the other parties (including TEA) treated the Teamsters as a participating party. The following conclusively demonstrates that the Teamsters was a party:

(1) In at least three of its QCR petitions TEA named the Teamsters as the incumbent bargaining representative.[12] In each petition, TEA noted that "the representation status of the other employees is uncertain." Administrative R. at 3, 19, 35, 51. Implicitly, the Teamsters could have also represented these "uncertain" employees;

(2) The Teamsters asserted that it could have represented the "uncertain" employees in its affidavit supporting King County and IFPTE's motion to dismiss on jurisdictional grounds;

(3) At the start of the agency proceedings, TEA filed its QCR petitions with PERC and submitted copies to its client, IFPTE, King County, and the Teamsters;

---

[9] *Den Beste*, 81 Wn. App. at 333.

[10] *Den Beste*, 81 Wn. App. at 339.

[11] *Den Beste*, 81 Wn. App. at 340.

[12] At oral argument TEA asserted that this was a scrivener's error and that TEA erred because IFPTE Local 17 was confused with Teamsters Local 117. However, there is no evidence that this was a scrivener's error and the petitions were ever amended.

(4) TEA and the other parties also provided the Teamsters with copies of all documents during the process;

(5) TEA included the Teamsters as a party when it formally filed a Certificate of Mailing and listed the Teamsters as a party;

(6) PERC listed the Teamsters as Party # 4 in its Record of Service, and served all correspondences and documents on the Teamsters;

(7) When TEA petitioned PERC for review of the Director's dismissal, TEA and the other parties continued to treat the Teamsters as a fellow party;

(8) The Teamsters took actions consistent with an entity participating as a party in the process. It wrote a letter to the PERC Director claiming representation of employees covered by TEA's petitions. In this letter the Teamsters listed the names of persons it represented that the petitions affected. In response to the Director's "show cause" letter, the Teamsters also provided legal argument in asking that TEA's petitions "be dismissed because they [were] untimely." [Administrative R. at 171.]

Thus, PERC allowed the Teamsters to "participate as a party in the agency proceeding." And TEA never objected to the Teamsters' participation.[13] It would have been absurd for PERC to ignore a party whose union members would be directly affected by the PERC's decision.

TEA argues that the Teamsters did not formally intervene in the agency proceeding and therefore never became a party. TEA points to a footnote in PERC's decision where PERC noted that the Teamsters had "moved for intervention" in one of TEA's petitions, that TEA opposed the intervention, and that the Teamsters "did not file a brief on review." Administrative R. at 372. The superior court also

---

[13] WAC 391-25-170 provides in part: "No motion for intervention shall be considered if made:

"(1) After the close of the hearing on the petition;

"(2) More than seven days after the filing and posting of an election agreement or cross-check agreement; or

"(3) More than seven days after the posting of an investigation statement."

relied on this footnote and the Teamsters' failure to intervene as the basis for finding it not to be a party. This was incorrect for two reasons.

First, it is unclear factually whether the Teamsters filed a motion to intervene. King County asserts that it did not. It seems unlikely the Teamsters did: (A) the certified record discloses no such motion; (B) PERC dismissed TEA's petitions at a preliminary stage and therefore, under PERC's intervention rules, there had yet to be an event that required the Teamsters to formally intervene, *see* WAC 391-25-170;[14] and (C) as noted above, the other parties treated the Teamsters as a party, and the Teamsters acted as a party. The evidence does not reflect a motion to intervene, and the trial court erred by basing its decision on the fact that it did.[15]

Second, and more importantly, the lack of formal intervention is not dispositive to the RCW 34.05.542(2) jurisdiction issue. Intervention is only one of two methods for an entity to become a party; here, the method at issue is whether the Teamsters participated as a party in the agency proceeding. To illustrate this more clearly, IFPTE never filed a motion to intervene; but it clearly participated as a party and it cannot now be challenged that it was a party. Neither the superior court below nor TEA on appeal discusses this method of becoming a party. As noted above, the Teamsters participated to such an extent that it was entitled to service of TEA's petition for judicial review. TEA's argument fails.

TEA's failure to serve the Teamsters divested the supe-

---

[14] An organization which demonstrates that it has been the exclusive representative of all or any part of the bargaining unit involved in proceedings under this chapter during the year preceding the filing of the petition may, by motion, intervene in the proceedings and, upon granting of its motion for intervention, shall be entitled to participate in the proceedings and to have its name listed as a choice on the ballot in any election.

WAC 391-25-170.

[15] The Teamsters had moved to intervene in TEA's original 1995 petitions. PERC may have confused the timing of the Teamsters' motion to intervene.

rior court of jurisdiction. The superior court erred by holding to the contrary and ruling on TEA's petition on the merits.

Reversed.

HUNT, A.C.J., and HOUGHTON, J., concur.