WASHOE COUNTY, NEVADA, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, APPELLANT, *v.* CHARLES E. OTTO; V PARK, LLC; MARYANNE INGEMANSON; TODD LOWE; AND THE VILLAGE LEAGUE TO SAVE INCLINE ASSETS, INC., RESPONDENTS.

No. 56253

August 9, 2012

282 P.3d 719

[Rehearing denied October 16, 2012]

*Richard A. Gammick*, District Attorney, and *David C. Creekman*, Chief Deputy District Attorney, Washoe County, for Appellant.

*Morris Peterson* and *Suellen E. Fulstone*, Reno, for Respondents.

# OPINION

By the Court, HARDESTY, J.:

In this appeal, we examine the Nevada Administrative Procedure Act (APA) requirement that a petitioner name, as respondents to a petition for judicial review of an administrative decision, "all parties of record." NRS 233B.130(2)(a). Because the APA grants the district court special statutory jurisdiction to review an administrative decision, we conclude that a party must strictly comply with the APA naming requirement as a prerequisite to invoking the district court's jurisdiction. Thus, when a petitioner fails to name in its petition each party of record to the underlying administrative proceedings, the petition is jurisdictionally defective and must be dismissed. Further, if the petitioner fails to invoke the district court's jurisdiction by naming the proper parties within the statutory time limit, the petition may not subsequently be amended to cure the jurisdictional defect.

## *FACTS AND PROCEDURAL HISTORY*

In March 2006, the Washoe County Board of Equalization adjusted the property tax values of approximately 300 Incline Village

and Crystal Bay taxpayers based on a determination that those properties' taxable values had been improperly assessed. Thereafter, "the County Board determined that by rolling back the 300 properties' taxable values, it had created an unequal rate of taxation for the 2006-2007 tax year." *Village League v. State, Bd. of Equalization*, 124 Nev. 1079, 1082, 194 P.3d 1254, 1257 (2008). "Accordingly, under its regulatory duty to 'seek to equalize taxable valuation within . . . the whole county,' the County Board rolled back the taxable values for the approximately 8,700 other properties in the Incline Village and Crystal Bay areas." *Id.* at 1082-83, 194 P.3d at 1257 (alteration in original) (quoting NAC 361.624). The Washoe County Assessor administratively appealed the equalization decision to the State Board of Equalization, but the State Board did not immediately consider the appeal because this court had imposed a stay temporarily enjoining the rollbacks pending a decision in a related appeal concerning the assessment methods. *Id.* at 1083, 194 P.3d at 1257. After further litigation and at the taxpayers' request, this court in 2008 directed the State Board to hear the Assessor's appeal. *Id.* at 1091, 194 P.3d at 1262-63.

The State Board then scheduled a hearing on the Assessor's appeal for June 10, 2009. At that time, the Assessor was named as the appellant and the County Board was named as the respondent, and the State Board provided notice of the June 10 hearing only to them. Notably, at that point, neither Washoe County nor the Incline Village and Crystal Bay taxpayers were named as parties to the State Board proceedings. Washoe County filed a motion to intervene with the State Board, arguing that it had a substantial interest in the outcome. The day before the hearing, taxpayers, many of whom were represented by Suellen Fulstone,[2] objected to being excluded as parties to the equalization appeal before the State Board and sought an emergency stay to postpone the hearing. The taxpayers argued that they were improperly excluded as respondents and that the record was deficient because it did not include information about the 300 individual taxpayers who previously obtained rollbacks.

At the hearing, Fulstone, as well as David Creekman, counsel to the Assessor and Washoe County, discussed the party status of the taxpayers with the State Board. Creekman agreed with Fulstone that this court "could[ not] have been any clearer in its characterization of the 8700 [taxpayers] as [r]espondents in [the] case," and that "they should be named as [r]espondents." At least in part because of the confusion as to whether the taxpayers were proper re-

---

[2]Fulstone provided the State Board with agent authorization forms for many of the taxpayers who had expressly authorized her to represent them. However, the record before us does not contain agent authorization forms for most of the 8,700 taxpayers.

spondents, and because the majority of taxpayers present supported a motion to continue the case,[3] the State Board continued the hearing on the Assessor's appeal.

Later that month, the State Board re-noticed the hearing on the Assessor's appeal for July 20, 2009, stating that any taxpayer could appear or be represented by counsel. The State Board then provided an agenda for the hearing, noting that if a taxpayer or representative was not present for the hearing, the State Board could, pursuant to NAC 361.708, proceed with the hearing, dismiss the proceeding with or without prejudice, or recess the hearing. Importantly, the State Board named the taxpayers as respondents to the proceeding in "Exhibit A" to its agenda, an exhibit that listed the names of all the taxpayers that would be affected by the Board's decision and which of those taxpayers were represented by counsel.

On July 20, the State Board considered the Assessor's appeal. At the hearing, Washoe County addressed its pending motion to intervene in the proceedings. It argued that any decision regarding equalization could impact its fiscal health and that, therefore, it should be added as a party to the proceeding. The State Board denied the motion, at least in part because it did not believe intervention would affect Washoe County's right as an aggrieved party to petition for judicial review of its decision. After the State Board ruled on Washoe County's motion, the Assessor made several objections to the taxpayers' involvement in the proceedings. Pertinent to this appeal, the Assessor argued that (1) The Village League to Save Incline Assets, Inc., did not have standing to appear on behalf of any of the taxpayers;[4] (2) any taxpayer not represented by counsel, absent from the State Board proceedings without an excuse, or represented by Village League should not be recognized as a party; and (3) none of the 300 taxpayers who previously obtained rollbacks should be recognized as parties.

Noting that "[e]very taxpayer . . . could be affected by [the State Board's] decision, one way or [an]other," the members of the State Board unanimously agreed that the taxpayers had standing, regardless of whether they were represented by counsel. Further, the State Board concluded that the 8,700 taxpayers "are absolutely included in this process," and they voted unanimously to include those taxpayers in the proceedings, as well as the 300 taxpayers

---

[3]Multiple taxpayers attended the hearing "in support of . . . Fulstone and her actions," and several briefly spoke in support of continuing the hearing. It is unclear from the record how many taxpayers attended the hearing, although the State Board commented that there were "a lot of people" in attendance.

[4]The State Board had previously permitted Village League to argue on behalf of the 8,700 taxpayers. *Village League v. State, Bd. of Equalization*, 124 Nev. 1079, 1084 & n.7, 194 P.3d 1254, 1258 & n.7 (2008).

who had previously obtained rollbacks, explaining that "[no]body should be excluded." They also agreed that Village League had standing. The parties then addressed the substantive issues, and the State Board decided to uphold the County Board's equalization determination "to roll back the 8700 taxpayers of Incline Village and Crystal Bay."

On October 9, 2009, the State Board issued a written decision in which it upheld the County Board's equalization determination. The State Board's decision specified that "Certain Taxpayers" had appeared in the matter through counsel and referenced "Exhibit A" to its decision, which, like Exhibit A to the State Board's agenda, listed the names of all the individual taxpayers affected by the decision and indicated which of those taxpayers were represented at the hearing by counsel. The State Board also instructed "[t]he Washoe County Comptroller . . . to certify the assessment roll of the county consistent with this decision, using Exhibit A as [a] list of Taxpayers that are affected by this Decision."

NRS 233B.130(2)(c) requires petitions for judicial review to be filed within 30 days of the State Board's decision. On November 6, 2009, Washoe County filed a petition for judicial review of the State Board's decision, in which it named in the caption "Certain Taxpayers (Unidentified)" as respondents, and described them in the body of the petition as "unidentified 'certain taxpayers' who were named as parties to the matter before the State Board . . . ." Washoe County indicated that, although the State Board had identified the taxpayers in this manner, it was unclear, even from Exhibit A, who the individual taxpayers were. In the petition, Washoe County challenged the identification of the proper parties to the State Board appeal, in addition to challenging the substantive bases for the State Board's decision.

Two taxpayers listed in "Exhibit A" as affected by the decision, Charles E. Otto and V Park, LLC (collectively, Otto), filed a motion to dismiss Washoe County's petition for judicial review on two grounds: (1) Washoe County lacked standing under NRS 233B.130 to bring the petition because it was not a "party of record" to the State Board's proceeding, and (2) Washoe County did not name all of the parties of record to the administrative proceedings because it did not identify the taxpayers who were respondents before the State Board, naming only "Certain Taxpayers (Unidentified)." Washoe County opposed the motion on the grounds that it had standing and that it did not know which taxpayers to name because Fulstone had not identified exactly which taxpayers she represented.

In January 2010, the district court denied the motion to dismiss, reasoning that Washoe County had standing to petition for judicial review, that "technical derelictions do not generally preclude a party's right to review," and that it would not dismiss the matter

simply because Washoe County failed "to name in the petition all affected taxpayers." Although the district court denied the motion to dismiss, it ordered Washoe County to name all of the affected taxpayers and serve them within 30 days, noting that Exhibit A attached to the State Board's decision included a list of taxpayers affected by the decision.

In February 2010, Washoe County filed its amended petition and recharacterized the respondent parties as "Certain Taxpayers" instead of "Certain Taxpayers (Unidentified)." Relying on NRCP 5(b), Washoe County purportedly served by mail each of the taxpayers who were listed in Exhibit A to the State Board's decision. The mailing consisted of a one-page, condensed version of the amended petition. Inexplicably, however, Washoe County did not attach Exhibit A to its amended petition or name any taxpayer individually in the caption, in the body of the amended petition, or in an attachment. Rather, it merely defined "Certain Taxpayers" as those people "who were named as parties to the matter before the State Board . . . ," as it had done in its original petition for judicial review.

Otto filed a motion to dismiss the amended petition pursuant to NRCP 12(b)(1) (lack of jurisdiction over subject matter),[5] arguing, inter alia, that Washoe County failed to name any individual taxpayers as required by the district court's order.[6] Washoe County opposed the motion, arguing that it named the respondents exactly as the State Board had characterized them: as "certain taxpayers."

The district court granted the motion to dismiss. It found that Washoe County had failed to comply with the court's previous order granting Washoe County an opportunity to name all of the affected taxpayers and that the failure to name the taxpayers violated the statutory requirement for naming respondents in a petition for judicial review, even under a substantial compliance standard. Washoe County now appeals, arguing that the district court improperly dismissed its petition for failure to name the taxpayers.

## DISCUSSION

Because the underlying proceeding involved a petition for judicial review of an administrative decision, this matter is governed by the APA, codified in NRS Chapter 233B. Applying de novo review, we interpret the naming requirement set forth in

[5]Additionally, Otto moved to dismiss the petition for judicial review pursuant to NRCP 12(b)(4) (insufficiency of service of process).

[6]Village League, Maryanne Ingemanson, and Todd Lowe also filed a statement of intent to participate in the matter and joined the motion to dismiss Washoe County's amended petition. The record shows that Ingemanson attended at least the June 10, 2009, hearing and that Fulstone argued on behalf of Village League.

NRS Chapter 233B to determine whether the district court properly dismissed Washoe County's petition. *See Webb v. Shull*, 128 Nev. 85, 88, 270 P.3d 1266, 1268 (2012) (applying de novo review when construing a statute); *see also Ogawa v. Ogawa*, 125 Nev. 660, 667, 221 P.3d 699, 704 (2009) (applying de novo review to issues of subject matter jurisdiction).

*NRS 233B.130(2)'s requirements are mandatory and jurisdictional*

Generally, "[c]ourts have no inherent appellate jurisdiction over official acts of administrative agencies except where the legislature has made some statutory provision for judicial review." *Crane v. Continental Telephone*, 105 Nev. 399, 401, 775 P.2d 705, 706 (1989). Thus, "[w]hen the legislature creates a specific procedure for review of administrative agency decisions, such procedure is controlling." *Id.*; *see also Fitzpatrick v. State, Dep't of Commerce*, 107 Nev. 486, 488, 813 P.2d 1004, 1005 (1991) (applying this reasoning to the APA); 73A C.J.S. *Public Administrative Law and Procedure* § 338 (2004) ("Since jurisdiction is dependent on statutory provisions, the extent of the jurisdiction is limited to that conferred by statute, and courts may lack jurisdiction under, or in the absence of, statutory provisions." (footnotes omitted)).

In Nevada, the Legislature enacted the APA to govern judicial review of many administrative decisions, permitting an aggrieved party to petition the district court for judicial review of a final agency decision in a contested case.[7] NRS 233B.130(1). However, "[p]ursuant to the [APA] . . . , not every administrative decision is reviewable." *Private Inv. Licensing Bd. v. Atherley*, 98 Nev. 514, 515, 654 P.2d 1019, 1019 (1982). Instead, only those decisions falling within the APA's terms and challenged according to the APA's procedures invoke the district court's jurisdiction. *See id.* "When a party seeks judicial review of an administrative decision, strict compliance with the statutory requirements for such review is a precondition to jurisdiction by the court of judicial review," and "[n]oncompliance with the requirements is grounds for dismissal." *Kame v. Employment Security Dep't*, 105 Nev. 22, 25, 769 P.2d 66, 68 (1989); *see also Ultsch v. Illinois Mun. Retirement Fund*, 874 N.E.2d 1, 7 (Ill. 2007) (stating that "[b]ecause review of a final administrative decision may be obtained only as provided by statute, a court exercises 'special statutory jurisdiction' when it

---

[7]Relevant to this provision, Washoe County's standing as an aggrieved party was challenged below and on appeal, but given our determination that its petition failed to invoke the district court's jurisdiction on other grounds, we do not reach that issue.

reviews an administrative decision,'' and that ''[a] party seeking to invoke a court's special statutory jurisdiction must strictly comply with the procedures prescribed by the statute'').

Accordingly, to invoke a district court's jurisdiction to consider a petition for judicial review, the petitioner must strictly comply with the APA's procedural requirements. Those jurisdictional procedural requirements are found in NRS 233B.130(2). That statute provides, in relevant part, that:

> 2. Petitions for judicial review *must*:
> (a) Name as respondents the agency and all parties of record to the administrative proceeding;
> (b) Be instituted by filing a petition in the district court in and for Carson City, in and for the county in which the aggrieved party resides or in and for the county where the agency proceeding occurred; and
> (c) Be filed within 30 days after service of the final decision from the agency.

(Emphasis added.)

Nothing in the language of that provision suggests that its requirements are anything but mandatory and jurisdictional. ''When interpreting a statute, we first look to its language,'' and when the language used has a certain and clear meaning, we will not look beyond it. *Webb*, 128 Nev. at 88-89, 270 P.3d at 1268; *see also Harris Assocs. v. Clark County Sch. Dist.*, 119 Nev. 638, 641-42, 81 P.3d 532, 534 (2003). NRS 233B.130(2) states that petitions for judicial review ''must'' name all parties of record. The word ''must'' generally imposes a mandatory requirement. *See Pasillas v. HSBC Bank USA*, 127 Nev. 462, 467, 255 P.3d 1281, 1285 (2011). Further, this court has previously held that the ''[f]iling requirements [paragraph (c) of NRS 233B.130(2)] are mandatory and jurisdictional.'' *Civil Serv. Comm'n v. Dist. Ct.*, 118 Nev. 186, 189, 42 P.3d 268, 271 (2002). Given that the word ''must'' applies to both the filing requirement of NRS 233B.130(2)(c) and the naming requirement of NRS 233B.130(2)(a), we see no reason to treat the naming requirement any differently.[8] We thus conclude that, pursuant to NRS 233B.130(2)(a), it is mandatory to name all parties of record in a petition for judicial review of an administra-

---

[8]NRS 233B.130(5) permits a court, within its discretion, to extend the time for service or to dismiss certain parties to the petition for judicial review. The absence of discretionary language in NRS 233B.130(2)(a), by contrast, is significant. *See* 73 Am. Jur. 2d *Statutes* § 129 (2001) (''[T]o express or include one thing implies the exclusion of another, or of the alternative.'').

tive decision, and a district court lacks jurisdiction to consider a petition that fails to comply with this requirement.[9]

*Washoe County failed to comply with NRS 233B.130(2)(a)*

We must now determine whether Washoe County complied with NRS 233B.130(2)(a)'s requirement to name as respondents to its petition "all parties of record to the administrative proceeding." In particular, we consider whether the Incline Village and Crystal Bay taxpayers were "parties of record," such that Washoe County was required to name them as respondents.

Although the APA does not describe the term "party of record," NRS 233B.035 defines "[p]arty" as "each person . . . named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party, in any contested case." Here, at the July 2009 hearing, the State Board unanimously admitted all 9,000 taxpayers as parties, observing that "[e]very taxpayer . . . could be affected by [the State Board's] decision, one way or [an]other." The State Board also named the taxpayers as parties in its pre-hearing agenda and in its post-hearing written decision. *See Checker Cab v. State, Taxicab Authority*, 97 Nev. 5, 10, 621 P.2d 496, 498 (1981) (explaining that an agency was a "party" because the administrative board "effectively 'admitted' [it] as [a] part[y] to the administrative proceeding within the meaning of NRS 233B.035"). Accordingly, in the record before us, the taxpayers were both admitted and named as parties to the administrative proceedings before the State Board, making them "parties of record."[10]

Nevertheless, Washoe County maintains that it was not required to name the taxpayers as respondents in its petition because they were improperly afforded party status by the State Board despite a

[9]As recognized by the district court, in *Civil Service Commission v. District Court*, we noted that "technical derelictions do not generally preclude a party's right to review." 118 Nev. 186, 189-90, 42 P.3d 268, 271 (2002) (citing *Bing Constr. v. State, Dep't of Taxation*, 107 Nev. 630, 632, 817 P.2d 710, 711 (1991)). To the extent that *Civil Service Commission* holds that a petition for judicial review that fails to comply with the NRS 233B.130(2)(a) naming requirement may nonetheless invoke the district court's jurisdiction, however, it is overruled.

[10]We recognize that generally, to be a party of record, one must enter an appearance or participate in some manner in the proceedings. *See, e.g., Woodrow v. Louisville & Jefferson County Planning & Zoning Commission*, 346 S.W.2d 538, 539 (Ky. Ct. App. 1961); *Technical Employees v. Public Emp. Relations*, 20 P.3d 472, 474-75 (Wash. Ct. App. 2001); *see also Desert Valley Water Co. v. State Engineer*, 104 Nev. 718, 720-21, 766 P.2d 886, 887 (1988). However, in the context of an equalization decision, one need not actually appear or par-

failure to notify them of the State Board proceedings. We conclude that, given the State Board's determination that the taxpayers were parties and that they were given proper notice, Washoe County's argument necessarily pertains to the merits of its petition for judicial review and thus, even if correct, does not excuse Washoe County from complying with NRS 233B.130(2)(a). Any failure to provide the taxpayers with proper notice does not affect the taxpayers' recognized party-of-record status for purposes of naming them as respondents in the petition for judicial review.

In its original petition for judicial review, Washoe County named "Certain Taxpayers (Unidentified)" in the caption, but did not identify any individual taxpayer.[11] Beyond the deficient caption, Washoe County's entire petition failed to identify any individual taxpayer; it merely described "certain taxpayers (unidentified)" in the body of the petition as "unidentified 'certain taxpayers' who were named as parties to the matter before the State Board . . . ."[12] Because "Certain Taxpayers (Unidentified)" and the description thereof does not name anyone, we conclude that Washoe County failed to comply with the mandatory requirement to name the individual taxpayer parties of record in its amended petition for judicial review. As such, the district court lacked jurisdiction to consider Washoe County's original petition for judicial review. *See Kuenstler v. Kansas Dept. of Revenue*, 197 P.3d 874, 879 (Kan. Ct. App. 2008) (explaining that "the trial court properly determined that [the petitioner's] failure to comply with the strict pleading requirements [for a petition for judicial review] deprived it of subject matter jurisdiction").

On appeal, the parties dispute whether Washoe County's amended petition complied with the APA requirements. Although we fail to see how merely removing "(Unidentified)" from the caption equates to naming the taxpayer parties of record, we need not address Washoe County's amended petition because the amended petition was filed after the APA's statutory filing deadline. As noted above, the time period for filing a petition for judi-

---

ticipate to be a party. Rather, the provisions that govern contested cases before the State Board of Equalization define a party, in relevant part, as "a person . . . *entitled to* appear in a proceeding of the State Board." NAC 361.684(11) (emphasis added).

[11]Washoe County also failed to name in its petition the Assessor and Village League.

[12]We note that Washoe County failed even to name the individual taxpayers that were represented by Fulstone, even though at almost every level of the proceedings, Washoe County did not dispute the party status of those particular taxpayers.

cial review is mandatory and jurisdictional. *Kame v. Employment Security Dep't*, 105 Nev. 22, 25, 769 P.2d 66, 68 (1989). Because Washoe County's original petition failed to invoke the district court's jurisdiction, it could not properly be amended outside of the filing deadline. *See, e.g., Commissioner v. Bethlehem Steel Corp.*, 703 N.E.2d 680, 683 (Ind. Ct. App. 1998) (holding that when an original petition is "statutorily defective," a district court does not obtain jurisdiction over it; thus, the district court "[has] no jurisdiction to allow an amendment relating back to the original day of filing"); *Kuenstler*, 197 P.3d at 881-82 (explaining that the petitioner's "failure to strictly comply with the [statutory] requirements . . . within the statutory period for filing his petition was a jurisdictional defect that rendered the trial court without subject matter jurisdiction" and that "the relation back provisions under the Code of Civil Procedure cannot operate to cure the trial court's lack of subject matter jurisdiction in an administrative action"); *Oklahoma Employment Sec. Com'n v. Carter*, 903 P.2d 868, 871 (Okla. 1995) (reasoning that because the failure to name necessary parties is a jurisdictional defect, a district court lacks jurisdiction to permit a petitioner to amend his or her petition outside the statutory time limit); *Wren v. Texas Employment Com'n*, 915 S.W.2d 506, 509 (Tex. App. 1995) (noting that "if [one] who was a party to the proceedings before the [agency] was not made a defendant within the statutory time limit, the petition may not be amended thereafter to cure the jurisdictional defect"). We agree with these authorities and similarly conclude that even if Washoe County's amended petition cured the jurisdictional defect, it does not relate back to the original petition because it was filed four months after the State Board's decision, well after the APA's 30-day time limit.

Although the district court lacked jurisdiction to permit Washoe County to amend its petition for judicial review outside of the APA's time limit, the district court ultimately reached the right result when it dismissed Washoe County's amended petition for judicial review. Accordingly, for the reasons stated above, we affirm the district court's order dismissing Washoe County's amended petition for judicial review.[13] *LVCVA v. Secretary of State*, 124 Nev. 669, 689 n.58, 191 P.3d 1138, 1151 n.58 (2008) ("[W]e will affirm the district court if it reaches the right result, even when it does so for the wrong reason.").

CHERRY, C.J., and DOUGLAS, SAITTA, GIBBONS, and PARRAGUIRRE, JJ., concur.

---

[13]Based on our disposition, we need not reach the parties' arguments relating to whether Washoe County sufficiently served the taxpayers.