13-4173-cv
Adelson v. Harris

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: August 28, 2014        Decided: December 19, 2014)

Docket No. 13-4173-cv

———————————————

SHELDON G. ADELSON,

*Plaintiff-Appellant*,

– v. –

DAVID A. HARRIS, MARC R. STANLEY, and NATIONAL JEWISH DEMOCRATIC
COUNCIL,

*Defendants-Appellees*.

———————————————

Before: CALABRESI, RAGGI, and CHIN, *Circuit Judges*.

Plaintiff-Appellant Sheldon Adelson appeals from the September 30, 2013 order of the
United States District Court for the Southern District of New York (Oetken, *J.*) dismissing
his defamation suit. Two significant and unresolved questions of Nevada law may be
determinative of this appeal: (1) whether a hyperlink to source material about judicial
proceedings suffices in an online petition for purposes of applying Nevada's common law
fair report privilege; and (2) whether Nevada's anti-SLAPP statute, as it existed prior to the
2013 amendments, covered speech that seeks to influence an election but that is not
addressed to a government agency. Accordingly, we certify these questions to the Nevada
Supreme Court and reserve decision.

———————————————

> James R. Ferguson, Mayer Brown LLP, Chicago, IL
> (Michele L. Odorizzi, Demetrios G. Metropoulos,
> Mayer Brown LLP, Chicago, IL; Andrew L. Frey,
> Mayer Brown LLP, New York, NY; L. Lin Wood and
> Jonathan D. Grunberg, Wood, Hernacki & Evans, LLC,
> Atlanta, GA, *on the brief*), *for Plaintiff-Appellant*.

Lee Levine (Seth D. Berlin, Gayle C. Sproul, Chad R. Bowman, Rachel F. Strom, *on the brief*), Levine Sullivan Koch & Schulz, LLP, New York, NY, *for Defendants-Appellees.*

---

GUIDO CALABRESI, *Circuit Judge*:

This case raises two significant and unresolved questions of Nevada statutory and common law. First, does a hyperlink to source material about judicial proceedings in an online petition suffice for purposes of applying the common law fair report privilege? Second, did Nevada's anti-strategic litigation against public participation ("anti-SLAPP") statute, Nev. Rev. Stat. §§ 41.653-41.670, as that statute was in effect prior to the most recent amendments in 2013, cover speech that seeks to influence an election but that is not addressed to a government agency? Because the issues are important, and the answers are unclear and may be determinative of the instant appeal, we reserve decision and certify these questions to the Nevada Supreme Court.

## BACKGROUND

Plaintiff-Appellant Sheldon Adelson brought a defamation action against Defendants-Appellees National Jewish Defense Counsel ("NJDC"), its Chair Marc Stanley, and its President and CEO David Harris (collectively, "appellees") based on statements that they made in an online petition and press release. The United States District Court for the Southern District of New York (Oetken, *J.*) dismissed Adelson's action under both Rule 12(b)(6) and the Nevada anti-SLAPP statute. *See Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013). Adelson appeals from that dismissal.

*Facts*

Appellees' online statements were made in the context of the 2012 presidential election cycle. During that cycle, Adelson spent large sums of money to support Republican candidates, financially backing the presidential bids, first, of Speaker Newt Gingrich and, later, of Governor Mitt Romney. On July 3, 2012, NJDC posted on its website a petition to pressure Governor Romney to stop taking Adelson's money. On July 11, after being contacted by representatives of Adelson who denied certain allegations in the petition taken from other news sources, appellees removed the petition from the NJDC website. At the same time, appellees posted a press release, which, without repeating the allegations, stated that appellees stood by the petition's contents. Adelson demanded that appellees issue a retraction and apology. When they refused, he filed suit.

Behind the contested allegations lies a separate lawsuit in Nevada against Adelson and Las Vegas Sands Corporation ("LVSC"). LVSC, of which Adelson is Chairman and CEO, owns and operates casinos throughout the world, including, through its Chinese subsidiary, in Macau. The Nevada suit was brought by a former executive of that subsidiary, Steven Jacobs, who was fired for cause in 2010. As part of the Nevada litigation, Jacobs filed a sworn declaration stating that, after he began efforts to eliminate loan sharks and prostitution from the Macau casino floor, "LVSC Senior Executives informed [him] that the prior prostitution strategy had been personally approved by Adelson." J.A. at 30. On June 28, 2012 the Associated Press ("AP") covered Jacobs's lawsuit, quoting this language, and reporting Adelson and LVSC's denial of any wrongdoing. *See* Ken Ritter, *Ex-Sands Exec Alleges Prostitution in Macau Sites*, Associated Press, June 28, 2012, *available at* http://bigstory.ap.org/article/ex-sands-exec-alleges-prostitution-macau-sites.

Following the AP coverage, appellees published their online petition. The petition urged readers to "Tell Romney to Reject Adelson's Dirty Money," and featured a graphic underneath this headline with Adelson's face on the left, Governor Romney's on the right, and a rhetorical question in all capital letters in the middle: "IF ONE OF YOUR BIGGEST DONORS WAS ACCUSED OF PUTTING 'FOREIGN MONEY' FROM CHINA IN OUR ELECTIONS & REPORTEDLY APPROVED OF PROSTITUTION, WOULD YOU TAKE HIS MONEY?" J.A. at 26.

Below the graphic was text elaborating on the basis for the petition. That text contained, *inter alia*, a reference to "reports [that] Adelson 'personally approved' of prostitution in his Macau casinos." *Id.* at 38. The quoted words "personally approved" were blue, underlined, and hyperlinked to the AP article.[1] By appellees' own admission, the hyperlinked article was their sole source of this information. They conducted no independent investigation.

At the time appellees posted the petition, Adelson and LVSC had filed no reply in the Nevada litigation. By the time a reply denying Adelson's alleged approval of any prostitution strategy was filed, appellees had already removed the petition from the NJDC website.

### Procedural History

In August 2012 Adelson brought suit in the Southern District of New York, although neither he nor appellees are domiciled in New York. He is a citizen of Nevada. Two

---

[1] The hyperlink to the AP article was to the version published on the Huffington Post website. *See* Ken Ritter, *Sheldon Adelson Approved 'Prostitution Strategy': Fired Former Sands Executive*, Huffington Post (June 29, 2012, 3:06PM), http://www.huffingtonpost.com/2012/06/29/sheldon-adelson-prostitution_n_1638439.html.

appellees, NJDC and Harris, are citizens of the District of Columbia. The third, Stanley, is a citizen of Texas.

Appellees timely moved to dismiss pursuant to Rule 12(b)(6) and the District of Columbia's anti-SLAPP statute. In their papers supporting this motion, appellees noted the existence of similar statutes in New York, Nevada, and Texas, and indicated their likely intent to move for dismissal under the law of one of these other jurisdictions should the court determine that such law, rather than the District of Columbia's, applied.

In March 2013 the district court indicated its inclination to apply Nevada law and requested that the parties brief the application of the Nevada anti-SLAPP statute. Appellees then moved to dismiss under that statute, and Adelson moved for limited discovery on appellees' knowledge of falsity in order to oppose the motion. In its decision dismissing Adelson's suit under Rule 12(b)(6) and the Nevada statute, the district court extended *nunc pro tunc* the statutory time to file a Nevada anti-SLAPP motion, denied Adelson's motion for discovery, and awarded costs and fees as provided for by the Nevada statute.

## DISCUSSION

### I

We review *de novo* the district court's dismissal under Rule 12(b)(6), accepting all factual allegations in the complaint as true and drawing all reasonable inferences in Adelson's favor. *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 n.2 (2d Cir. 2014). We likewise review *de novo* all issues determined as a matter of law in connection with the district court's dismissal under the Nevada anti-SLAPP statute. *Chandok v. Klessig*, 632 F.3d 803, 812, 818-19 (2d Cir. 2011); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006). The district court's finding of good cause to extend the time to file an anti-SLAPP motion is

reviewed for abuse of discretion, *see Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012), as is the district court's decision to deny Adelson's request for discovery, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

## II

## A

In our review of the Rule 12(b)(6) dismissal, a first question is whether Nevada law would deem appellees' petition not to be defamatory as a matter of law even in the absence of an applicable privilege. Having invited further briefing on this issue by the parties, we conclude that we cannot readily say that. While appellees' petition contained political speech that plainly falls under the protection of the First Amendment, it arguably went beyond such speech when it repeated factual allegations made by Jacobs in the course of his suit in Nevada. Absent an applicable privilege, then, a constitutional question may well arise as to whether First Amendment protection for political speech extends to the republication before us.

To be clear, we agree with the district court that, in a partisan petition like this, appellees' characterization of Adelson's money as "dirty" and "tainted" is the sort of rhetorical hyperbole and unfalsifiable opinion protected by the First Amendment. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 150 (2d Cir. 2000). Moreover, where, as here, the grounds of the opinion expressed by the speaker are fully disclosed, the opinion itself is normally held not to be actionable even under state defamation law. *See, e.g.*, *Lubin v. Kunin*, 117 Nev. 107, 113 (2001); Restatement (Second) of Torts § 566 ("A defamatory communication may consist of

6

a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.").

In contrast, the statement that Adelson reportedly approved of prostitution asserts reasonably specific facts, republication of which may potentially be defamatory if unprivileged. *See Flowers v. Carville*, 310 F.3d 1118, 1128-29 (9th Cir. 2002). Whether a finding of liability could be made despite the constitutional protections outlined in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and its progeny is a question we leave to another day.

Indeed, because we are loath to decide a constitutional question in advance of the necessity of doing so, *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."), and because a determination under Nevada law that appellees' republication is defamatory absent some privilege may require us to decide the constitutionality of liability under these circumstances, we do not decide the prior question of whether, apart from the privilege discussed below, the publication violates Nevada defamation law, nor do we expressly certify this question.

**B**

To avoid a possibly unnecessary First Amendment decision, we turn instead to Nevada's common law fair report privilege, *see, e.g.*, *Lubin*, 117 Nev. at 114-15; *Sahara Gaming Corp. v. Culinary Workers Union Local* 226, 115 Nev. 212, 215-19 (1999), asking whether we can apply it to the republished allegations, as appellees urge us to do, and as the district court did. Here, however, we find a question not yet answered by Nevada law, nor

7

sufficiently clearly answered by the law of any other state: Does a hyperlink to source material about judicial proceedings suffice to qualify as a report for purposes of applying the privilege? *Cf. Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985) ("It must be apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings.").

Adelson argues that the inclusion of some other form of attribution, such as a footnote or a web address, was required for appellees to be able to invoke the privilege. Appellees contend that no further attribution is necessary where, as in the present case, the communication occurred online, and the hyperlinks were not hidden but visible in the customary manner, that is, by being embedded in blue, underlined text. The issue is ultimately one of state law on which no state's highest court has spoken,[2] and the question not only may be determinative of the instant appeal but is also of recurring importance in the area of internet defamation more generally. We, therefore, certify the question. We note that Nevada permits certification where an issue of state law "*may* be determinative," Nev. R. App. P. 5(a) (emphasis added), and that such an approach permits us to certify without, at this point, reaching the underlying constitutional question.[3]

---

[2] The only circuit case on point, albeit indirectly, is *Jankovic v. Int'l Crisis Grp.*, 593 F.3d 22 (D.C. Cir. 2010), and in *Jankovic*, the District of Columbia Circuit assumed without deciding that the inclusion of two inoperative web addresses sufficed, because the report there was not "fair" and did not qualify for the privilege on that ground alone.

[3] We note that the privilege also requires accuracy, fairness, and impartiality, matters on which Nevada law is not so uncertain as to demand certification. *See Lubin*, 117 Nev. at 114-15; *Sahara Gaming*, 115 Nev. at 215-19. If the Nevada Supreme Court accepts certification of our particular privilege question, however, it may certainly discuss these other requirements of the fair report privilege as it deems relevant to this case.

## III

Nevada's anti-SLAPP statute immunizes specific types of communication from civil liability and, hence, may be a separate basis on which dismissal was proper. The application of that statute to this case, however, raises three distinct issues, one of which we find sufficiently uncertain to warrant certification.

### A

First, there is the question of whether Nevada's anti-SLAPP provisions apply in federal proceedings under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Many courts have held that these statutes, including the one here, are to be applied federally in such circumstances. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79, 91-92 (1st Cir. 2010); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168-69 (5th Cir. 2009); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999); *cf. Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 276 (9th Cir. 2013) (Paez, J., concurring) (recognizing extension of *Newsham* to Nevada statute). The question is one of federal, not state, law. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 152 (2d Cir. 2013) (citing *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726-27 (1988); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965)). We, therefore, decide it as a threshold matter on the facts of this case.

While our Circuit has not previously examined the issue, the specific state anti-SLAPP provisions applied by the district court—immunity from civil liability, Nev. Rev. Stat. § 41.650 (amended 2013), and mandatory fee shifting, *id*. § 41.670—seem to us unproblematic. *Cf. Ferri v. Ackerman*, 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law."); *Cotton v. Slone*, 4

F.3d 176, 180 (2d Cir. 1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity."). Each of these rules (1) would apply in state court had suit been filed there; (2) is substantive within the meaning of *Erie*, since it is consequential enough that enforcement in federal proceedings will serve to discourage forum shopping and avoid inequity; and (3) does not squarely conflict with a valid federal rule. *See Liberty Synergistics*, 718 F.3d at 153.

A third provision of the Nevada anti-SLAPP statute may present a closer question. Adelson sought and was denied discovery. Nevada bars discovery upon the filing of an anti-SLAPP motion. Nev. Rev. Stat. § 41.660(3)(e). And some federal courts have declined to apply anti-discovery provisions in statutes similar to Nevada's. *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001) (holding that California's limits on discovery are not to be applied federally because they conflict with discovery-permitting aspects of Federal Rule 56). We need not resolve this question, however, because the district court clearly denied discovery under Federal Rule 56 and not as a result of the Nevada anti-SLAPP statute. *See Adelson*, 973 F. Supp. 2d at 503 n.26.

Hence, the question before us is not whether federal courts must enforce Nevada's stay provision, but only whether the district court abused its discretion under Federal Rule 56. Where, as in this case, the discovery sought was not reasonably calculated to create a material issue of fact, we find no abuse. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994).

**B**

A second issue at the threshold of our review of the dismissal pursuant to the Nevada statute is whether there was good cause to extend the time for filing an anti-SLAPP motion.

10

Under Nevada law, such motions "must be filed within 60 days after service of the complaint," but courts may extend the period "for good cause shown." Nev. Rev. Stat. § 41.660(2). The statutory meaning of "good cause" is, of course, a question of state law. But Adelson's argument that this period is jurisdictional is without merit. Nothing on the face of the statute compels that conclusion; indeed, Nevada statutes that confer discretion to extend a time period are not jurisdictional. *Compare Eberle v. State ex rel. Nell J. Redfield Trust*, 108 Nev. 587, 590 (1992) (stating that statutory period extendable by court "is, by its own terms, not a jurisdictional requirement"), *with Washoe Cnty. v. Otto*, 282 P.3d 719, 725 n.8 (Nev. 2012) (stating that "[t]he absence of discretionary language in [the statute], by contrast, is significant" to court determination that requirement is jurisdictional). And Nevada courts have granted extensions of this period in circumstances similar to those before us. *See, e.g.*, *Zermeno v. Stratosphere Corp.*, No. 2:07-cv-00581-KJD-LRL, ECF No. 29, at 3 n.2 (D. Nev. Nov. 2, 2009) (granting extension *nunc pro tunc* where movant was not on notice that special motion to dismiss was appropriate until adversary produced relevant information in discovery); *KJR Mgmt. Co. v. First Web Search, LLC*, No. A549570, 2008 WL 7907954, at *1 (Nev. Dist. Ct. Nov. 19, 2008) (same).

Thus, we need only decide whether the district court acted within its discretion when it extended the 60-day filing period *nunc pro tunc*. We conclude that it did, given the difficult choice-of-law question and appellees' timely filing of a comparable motion, which, *inter alia*, indicated the possible alternative statutes and appellees' likely intent to avail themselves of whatever anti-SLAPP relief might apply.

11

Beyond these threshold matters lies another, less easily answered question: Did the Nevada anti-SLAPP statute, as it existed prior to the 2013 amendments, cover speech like appellees' that seeks to influence an election but that is not addressed to a government agency?

As it was in effect through October 1, 2013 (the day after the district court's order dismissing Adelson's case), the law protected "good faith communication[s] in furtherance of the right to petition," Nev. Rev. Stat. § 41.650, defining this phrase to mean any:

1. Communication that is aimed at procuring any governmental or electoral action, result or outcome;

2. Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; or

3. Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law,

which is truthful or is made without knowledge of its falsehood. *Id.* § 41.637. Appellees' petition sought to influence an election. Hence, it would seem to fall under the first prong according to the plain text of the then-existing statute.

It was stated, however, in *John v. Douglas Cnty. Sch. Dist.*, 125 Nev. 746 (2009), that "the anti-SLAPP statute only protects citizens who petition the government from civil liability arising from *good-faith communications to a government agency*." *Id.* at 753 (emphasis in

original). The import of the italicized phrase appears to us ambiguous. While it may well be read in context to underscore the statutory requirement of good faith, the stress does not end there. And we cannot be sure whether "*communications to a government agency*" is also emphasized for the simple reason that the communication in *John* involved the second prong of the statute, and *only* that prong, or whether this language was meant to impose a more general limitation.

Since *John*, the anti-SLAPP statute has been expressly amended so that it now clearly covers statements like appellees' and is not limited to communications to a government agency. *See* Nev. Rev. Stat. § 41.637 (inserting a fourth type of protected speech: "any . . . [c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum"); *id.* § 41.650 (immunizing from civil suit "the right to free speech in direct connection with an issue of public concern"). The question then arises: In passing this amendment, did the Nevada legislature add something missing before or merely render explicit what it believed to be already there? An unpublished opinion by the Nevada Supreme Court states that the amendment was explanatory only and not a change. *See Jensen v. City of Boulder City*, No. 57116, 2014 WL 495265, at \*2-3 (Nev. Jan. 24, 2014) (unpublished opinion). If that statement *is* the law of Nevada, this aspect of the case would be easy. Because, however, the opinion is unpublished, and by its own terms non-precedential, we cannot be sure. Hence, we certify this question as well.[4]

---

[4] Were this the only unresolved question of state law before us, we might not certify it because the prospective application of the law is clear in light of the change, and the issue is unlikely to recur. Since, however, we are already certifying the hyperlink issue, we think it appropriate to certify this uncertain issue of state statutory construction as a second question. Of course, the Nevada Supreme Court may decline to address the issue, as it sees fit, in which case we would then decide the question according to our own reading of the statute.

**CONCLUSION**

Two unresolved questions of state law may be determinative of the instant appeal and are hereby respectfully CERTIFIED to the Nevada Supreme Court: (1) whether a hyperlink to source material about judicial proceedings suffices in an online petition for purposes of applying Nevada's common law fair report privilege; and (2) whether the Nevada anti-SLAPP statute, as it existed prior to the amendments in 2013, covered speech that seeks to influence an election but that is not addressed to a government agency. The Nevada Supreme Court may reformulate or expand these questions as it sees fit. We also welcome its guidance on any other pertinent questions that it wishes to address, including those questions of state law discussed above that we have not certified.

The Clerk of the Court is ORDERED to transmit a Certificate, as set forth below, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case with the benefit of the Nevada Supreme Court's holdings, upon receipt of that Court's opinion, or without such benefit, should that Court decline certification.[5]

**CERTIFICATE**

The foregoing is hereby certified to the Nevada Supreme Court in accordance with 2d Cir. R. 27.2 and Nev. R. App. P. 5(a), as ordered by the United States Court of Appeals for the Second Circuit.

---

[5] Costs shall abide final disposition of the case.

14