167 P.3d 922 (2007)
CLARK COUNTY DISTRICT ATTORNEY, JUVENILE DIVISION; Mario C; and Gena C., Petitioners,
v.
The EIGHTH JUDICIAL DISTRICT COURT of the State of Nevada, in and for the COUNTY OF CLARK, and the Honorable Gerald W. Hardcastle, District Judge, Family Court Division, Respondents, and
Michael R. and Teresa R., Real Parties in Interest.
No. 47489.
Supreme Court of Nevada.
September 20, 2007.
*923 David J. Roger, District Attorney, and Brigid J. Duffy, Deputy District Attorney, Clark County, for Petitioner Clark County.
Paul M. Gaudet, Las Vegas, for Petitioners Mario C. and Gena C.
Longabaugh Law Offices and Marvin L. Longabaugh, Las Vegas, for Real Parties in Interest.
BEFORE THE COURT EN BANC.

OPINION
By the Court, SAITTA, J.:
In the proceedings underlying this petition, a child was placed in adoptive foster care during the same month that the child's relatives came forward and requested that the child be placed with them. Almost one year later, and after the foster parents expressed an interest in adopting the child, the child's relatives filed a motion for the child's immediate placement with them. Subsequently, the district court ordered the child placed with the relatives.
In this original proceeding, we consider whether the district court misapplied our recent holding in Matter of Guardianship of NS.[1] in two ways: (1) determining that the child's-best-interest standard gives way to a decision on whether certain legislative goals are met; and (2) concluding that to overcome the statutory familial preference, the Department of Family Services or the foster parents were required to show that the relatives were unsuitable or that placement with them would be detrimental to the child. Although the district court must, in determining whether a familial preference exists, examine the statutory requirements of relatedness and suitability, the district court's primary focus should remain on the child's best interest. Consequently, any unsuitability or detriment standard should not have played a role in the district court's analysis; instead, after determining that the familial preference applies, a district court must, within its discretion, further determine whether placement with family members, over a suitable foster family, is in the child's best interest. Because the district court failed to apply the appropriate standard, we grant this petition.

FACTS
This case concerns a child born to Doreen R. and Richard 0. on December 16, 2003. Three days after the birth, Doreen was deemed unable to care for the child because of drug use, lack of financial resources, and failure to obtain prenatal care. Richard initially denied paternity and refused to sign the child's birth certificate. The child was declared a ward of the court, and legal custody was awarded to the Clark County Department of Family Services (DFS), which then began the process of foster care placement.
*924 Initially, DFS attempted to place the child with maternal relatives in California. The relatives visited the child but declined placement.
In March 2004, Richard wrote to DFS and claimed paternity of the child. Incarcerated at the time, Richard asked DFS to contact his mother as well as his sister, Teresa R., both of whom reside in New York. Richard requested that custody of the child be given to one of those relatives. DFS advised Richard that until paternity was established through DNA testing or Doreen demonstrated her fitness for custody by completing her assigned case plan or parental rights were terminated, DFS would retain custody.[2] Citing a lack of funds, it was more than a year later when DFS formally requested DNA testing. The results of that test, conducted in July 2005, confirmed Richard's paternity.
After receiving Richard's 2004 correspondence, DFS contacted Richard's mother (the child's paternal grandmother) regarding placement. DFS informed the grandmother that it had received a letter from Richard and that he had mentioned her and his sister as options for the child's placement. The grandmother stated that she did not want to "burden" her daughter, Teresa, with the placement issue. Ultimately, the grandmother notified DFS that because of her arthritis and financial concerns, she could not care for the child. DFS did not pursue the issue of placement with Teresa.
Thereafter, DFS introduced the child to Mario and Gena C., Texas residents, and, in February 2005, DFS made a foster placement with them, with the goal of an eventual adoption. At the time of the placement, DFS filed a petition seeking termination of Doreen's and Richard's parental rights. The petition was granted, and parental rights were terminated in 2006.[3]
Six days after the child's placement with Mario and Gena, Teresa contacted DFS; Teresa was informed that the child had been placed in an adoptive foster home and that DFS was proceeding toward an adoption. DFS explained that since the child had been in foster care for a significant period of time and because of the child's age and placement with a family interested in adoption, DFS would only pursue adoption and not a guardianship, at that point. Teresa then expressed a desire to adopt the child herself but, according to DFS, Teresa explained that she would have to discuss the matter with her husband, Michael. A DFS representative testified that when contacted, Michael was equivocal and indicated that he and Teresa still needed to discuss whether adopting the child would be in the child's best interest. In a June 2005 placement report, DFS informed the district court that the child had adjusted well to Mario and Gena and that Teresa and Michael were "unwilling to commit to adoption" and appeared "torn between what [was] in the child's best interest and protecting [Richard's] parental rights."
Teresa and Michael testified, however, that although they initially did not want to interfere with the grandmother's interest in custody or Richard's parental rights, and thus did not come forward, they were always interested in obtaining custody, and, after it became apparent that neither the grandmother nor Richard would serve in a parenting role, they were interested in adopting the child. According to Teresa and Michael, during all communications with DFS after Teresa made contact in February 2005, they unequivocally expressed their desire to care for and adopt the child.
Almost a year after contacting DFS, Teresa and Michael filed a motion for the child's immediate placement with them. At the subsequent evidentiary hearing, Teresa and Michael conceded that the child, two years old by then, had bonded with Mario and Gena. Furthermore, Teresa and Michael admitted that they had never met or had any contact with the child.
*925 At the district court hearing, Mario and Gena who expressed a desire to retain custody of and ultimately adopt the child, explained that they felt contact with the biological family might be to the child's benefit, yet maintained that the familial preference did not apply because of Teresa and Michael's failure to participate in the initial placement proceedings. DFS testified that it had exhausted all relative resources before placing the child with Mario and Gena.
The district court then entered a written order directing that the child be placed with Teresa and Michael. In its order, the district court determined that at the time the child was placed with Mario and Gena in foster care, Teresa and Michael "came forward and requested that [the child] be placed with them." Citing as its authority this court's opinion in Matter of Guardianship of N.S.,[4] the court stated that Teresa and Michael were entitled to a familial placement preference under NRS 432B.550(5)(b). The court expressed its belief that "the [familial preference] standard [was] not based on the child's best interests but reflect[ed] compliance with the Legislative scheme." Additionally, according to the court's reading of N.S., for Mario and Gena to overcome this statutory familial preference, they (or DFS) had to show that placement with Teresa and Michael was unsuitable or would result in a detriment to the child.
Although the district court acknowledged that the child was indisputably in a good adoptive foster home, it nonetheless concluded that there was an insufficient showing of detriment to deny Teresa and Michael's request for placement. The court also recognized that the State of New York had approved placement of the child with Teresa and Michael under the Interstate Compact for the Placement of Children.
Clark County and Mario and Gena now petition this court for a writ of mandamus directing the district court to vacate its placement order.

DISCUSSION
Standard for writ relief
The decision to entertain a petition for a writ of mandamus rests within the discretion of this court.[5] A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion.[6] Mandamus is an extraordinary remedy that will not be granted if the petitioner has an alternative "plain, speedy, and adequate remedy in the ordinary course of law."[7] In this case, the petition is proper because the district court's order, issued under NRS Chapter 432B, is not appealable.[8] We have determined to exercise our discretion and consider this petition. In doing so, we necessarily consider whether the district court was legally compelled to perform an action or whether it manifestly abused its discretion in rendering its placement decision.[9]
Standards for placement under Matter of Guardianship of N.S.
The standard announced in Matter of Guardianship of N.S. requires the district court to first consider the legislative mandate of NRS 432B.550(5).[10] That statutory provision states, in relevant part, that "[p]reference must be given to placing the child with any person related within the third degree of consanguinity to the child who is suitable and able to provide proper care and guidance for the child, regardless of whether the relative *926 resides within this State."[11] Here, the district court, after finding Teresa and Michael to be suitable persons sufficiently related to the child under NRS 432B.550(5), concluded that, based on the standard announced in N.S., it could deny this preferred familial placement only if the foster parents or DFS could show actual detriment to the child from the placement. Thus, the district court interpreted this court's decision in N.S. as creating a rebuttable presumption when applying NRS 432B.550(5) in placement proceedings. Clark County contends that the district court misinterpreted N.S. as creating a rebuttable presumption in favor of placement with relatives and insists that the statutory language only creates a preference and, thus, the district court must consider the child's best interest when deciding whether to place a child with family members or an adoptive foster family.
As the focus of the instant dispute centers on the standard adopted in N.S., we necessarily begin by revisiting that opinion. In N.S., the primary issue concerned the district court's failure to apply NRS 432B.550(5)'s familial preference to the child's initial placement arrangement.[12] The child's grandmother, known to the Division of Child and Family Services (DCFS), was determined, based on a Child Protective Services report, to already be caring for too many children (the child's five siblings). The district court, without first considering the grandmother's perspective regarding placement or her ability to care for the child, granted custody of the child to DCFS, which then placed the child in foster care. Consequently, the district court did not apply or even consider the familial preference in making its custody determination, and as a result, the grandmother, on her part, necessarily and promptly petitioned the court for appointment as the child's guardian.[13]
In discussing NRS 432B.550(5)'s familial preference, this court set forth the following language, which likely generated confusion in the proceedings below:
[A]lthough the best interest of the child standard guides the district court at all times, here the analysis "`does not turn on whether the foster home is a "better" home, or the foster parents are "better" parents than the alternative home or family setting.'" The district court's inquiry should instead focus on whether the "`proposed placement plan satisfies the legislative goals and objectives of the [statute] by providing a stable, safe and healthy environment for the child considering all of the circumstances surrounding the placement.'" As noted by the California Court of Appeal, an "underlying purpose of the relative placement preference is to facilitate reunification". . . . The Minnesota Supreme Court has, in turn, concluded that "a party seeking avoidance of the statutory order of preference [has] the obligation to make an affirmative showing that the first preferred placement would be detrimental to the child."[14]
This quoted language created confusion for the district court in two ways.
First, the initial sentences, read together, suggest that the child's best interest is not the standard, but rather the focus is on the certain legislative goals. Indeed, the district court, in the proceedings underlying this petition, concluded that when deciding whether to award custody to a relative or nonrelative, "the standard is not based on the child's best interests[,] but reflects compliance with the Legislative scheme." Thus, the district court noted that the "law requires that the relatives be given placement of the child regardless of the child's overall best interests." As we explain below, however, the child's best interest continues to be the overarching standard to be used by the district court in making placement decisions, even those involving the familial preference.
Second, the district court understandably looked to N.S.'s quotation of the Minnesota Supreme Court in determining that N.S. interpreted the familial preference as a rebuttable presumption that could be overcome *927 only if the foster parents or DFS could show actual detriment to the child from the placement. The Minnesota quote, however, is dictum from a section in N.S. discussing some of the policies behind familial preference and should not be relied upon by the district court when making its NRS 432B.550 placement determination.
As our N.S. decision did not fully address the language and legislative history of NRS 432B.550(5), our clarification of the familial preference's role in placement decisions begins with an examination of this statutory provision.
NRS 432B.550(5)
As set forth above, the Nevada Legislature has created a preference for children to be placed with relatives in certain situations. If the district court finds that a child is in need of protection and the child is not permitted to remain with his or her parents or guardian, the district court, when determining the child's placement under NRS 432B.550(5)(b), must give preference
to placing the child with any person related within the third degree of consanguinity to the child who is suitable and able to provide proper care and guidance for the child, regardless of whether the relative resides within this State.
Any search for a relative with whom to place a child pursuant to this section must be completed within 1 year after the initial placement of the child outside of his home.
Statutory interpretation is a question of law.[15] With respect to unambiguous statutes, this court looks to the statute's plain language to give effect to the Legislature's intent.[16] A reading of the statute's plain language is not possible, however, when the statute is ambiguous-subject to more than one reasonable meaning.[17] NRS 432B.550(5)(b)'s language is ambiguous, as it is susceptible to more than one reasonable interpretation. It could operate like a presumption and mean that a child should, without further consideration, automatically be placed with sufficiently related family members, if they timely seek custody and are suitable and able to provide adequate care and guidance. Or, the statutory language could mean that sufficiently related and qualified family members should, if possible, be considered for placement first, thus obtaining a preference over other equally qualified individuals, but only in the context of considering the child's best interest. Or, the language could mean that even if family members are not available for the initial placement, as long as they timely seek custody, they should be given a preference over equally suitable nonrelatives, again in the context of considering the child's best interest. Under either of these latter interpretations, when placement with nonrelatives best serves the child's best interest, the familial preference is negated. Since the statute is ambiguous, we look to its legislative history to understand its meaning.[18]
In 1991, NRS 432B.550(5) was added to the abuse and neglect statutes to expand the rights of certain relatives in child custody matters.[19] During a hearing before the Assembly Committee on the Judiciary, it was observed that if a relative was suitable, the proposed senate bill "would give them preference before . . . the children were placed in a welfare or foster parent home."[20] The bill was intended to "put the court on judicial notice that regardless of state lines, or within the state, it was preferable to keep children together if there were family members ready, willing and able to do this."[21] The *928 legislative history further reveals that while this provision creates a familial preference, the district court maintains "discretion not to use the preference."[22] Thus, NRS 432B.550(5) is not intended to remove the district court's discretion in placement proceedings.
The Legislature's use of the word "preference," rather than "presumption," suggests its concern that relatives who are "ready, willing, and able" to keep a family together be favored for placement over nonrelatives, but that suitable relatives are not necessarily entitled to custody. Thus, we construe NRS 432B.550(5)(b)'s placement preference to operate within the overall umbrella of the child's best interest.
When the district court is determining a child's initial placement under the statute and relatives interested in having the child placed with them are before the court, the court should first resolve whether a familial preference exists. With respect to this issue, the court must first consider whether the relative is sufficiently relatedwithin the third degree of consanguinityand whether the relative is "suitable and able to provide proper care and guidance for the child." If so, then the court should consider placing the child with this relative before contemplating nonrelative placement, but the placement decision lies in the district court's discretion.
If, however, an initial non-family placement is made before interested relatives are before the court, and interested relatives then timely seek custody, the court should again determine whether the familial preference exists and, if so, consider placing the child with the relatives, if this placement serves the child's best interest.
While NRS 432B.550(5) does not expressly provide for consideration of the child's best interest, the statute concerns the placement of a child with someone other than the child's parent, and since neither the relatives nor nonrelatives who seek custody of the child occupy the status of parent in the proceedings, the child's best interest necessarily is the main consideration for the district court when exercising its discretion concerning placement.[23] Accordingly, after concluding that a familial preference exists, the district court's analysis should center on the child's best interest.
Timing
As set forth above, NRS 432B.550(5) expressly recognizes the Legislature's concern with stability for children placed outside of their homes by requiring that any search for relatives with whom to place the child be concluded within one year of the child's initial placement outside of his home.[24]
Teresa and Michael contend that DFS was solely responsible for failing to identify them as relatives for placement and for not contacting them. The documents before this *929 court show that DFS attempted placement first with maternal relatives and then with the paternal grandmother. DFS should have disregarded the grandmother's suggestion that it not bother Teresa and Michael with placement; since Richard had requested that DFS contact Teresa and Michael for possible placement, DFS should have pursued whether placement with them was a viable option. Even so, Teresa and Michael, who were on notice that the child had been placed into protective custody, had a concomitant duty to step forward and request custody, if they wished to have the child placed with them.
A family member's failure to timely and definitively request custody of a child who has been placed in protective custody, when that family member knows of the protective custody placement, may ultimately either render the statutory familial preference inapplicable or influence the district court's determination of the child's best interest. If a family member, with knowledge that a child has been place into protective custody, delays seeking custody of the child for more than one year after the child's initial placement, the family member must demonstrate a reasonable excuse for the delay in order to retain the familial preference's application. And even when a family member seeks custody within one year of the child's initial removal, the district court may consider any delay by the family member in determining the child's best interest.
Unlike the situation in N.S., in which the grandmother petitioned the district court for custody when the child was approximately four months old and concurrently took affirmative steps to accommodate this sixth grandchild,[25] Teresa and Michael's commitment to securing custody of the child is unclear from the documents before this court. Certainly, Teresa and Michael did not come forward until February 2005, more than a year after the child was placed into protective custody, even though they knew of the child's initial placement shortly after it occurred. Michael testified that he and Teresa learned from the grandmother "a couple weeks after the child was born" that the child had been placed into protective custody. The hearing testimony suggests that once Teresa contacted DFS in February 2005, she was willing to adopt the child, but a DFS caseworker offered conflicting testimony that Teresa and Michael were not ready and willing to commit to adoption at that time.
The district court, in its order, failed to make any specific findings regarding witness credibility, although the court noted that during the same month that the child was placed with Mario and Gena, Teresa and Michael "came forward and requested that [the child] be placed with them." Given the importance of the district court's child placement decisions as well as the inherent difficulties in reviewing matters within the district court's discretion, written factual findings, both with respect to credibility determinations as well as evaluations of the child's best interest, must be made.

CONCLUSION
Preservation of familial relationships is an important consideration in determining what is in the child's best interest for placement purposes. Under NRS 432B.550, the district court must first determine whether the relatives seeking custody of a child are sufficiently related to the child, then the court must determine suitability. Once the criteria for the statutory preference are established, the statute creates a familial placement preference, not a presumption, and the district court must then consider placing the child with the relatives. The placement decision ultimately rests in the district court's discretion, which must be guided by careful consideration of the child's best interest. In rendering its placement decision, the district court must make written findings with respect to any credibility issues and with regard to its ultimate conclusion regarding the child's best interest. The district court's placement determination will not be reversed absent an abuse of discretion.
*930 As the district court was compelled to apply these standards, we grant the petition and instruct the clerk of this court to issue a writ of mandamus that directs the district court to vacate its placement order and to consider the facts and circumstances concerning the present placement in reaching a determination of the child's best interest in obtaining a permanent home.[26]
We concur: MAUPIN, C.J., and GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS, and CHERRY, JJ.
NOTES
[1] 122 Nev. 305, 130 P.3d 657 (2006).
[2] Richard informed DFS that he had been genetically tested before his incarceration, although whether he was referring to a DNA test incident to criminal case processing or to a paternity test is unclear.
[3] Neither Doreen nor Richard appealed from the order terminating their parental rights.
[4] 122 Nev. 305, 130 P.3d 657 (2006).
[5] Smith v. District Court, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991).
[6] See NRS 34.160; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536 (1981).
[7] NRS 34.170.
[8] See In re Temporary Custody of Five Minors, 105 Nev. 441, 443, 777 P.2d 901, 902 (1989); NRAP 3A(b)(2).
[9] Marquis & Aurbach v. Dist. Ct., 122 Nev. ___, ___, 146 P.3d 1130, 1136 (2006); Round Hill, 97 Nev. at 605-04, 637 P.2d at 536.
[10] 122 Nev. at 312-13, 130 P.3d at 662.
[11] NRS 432B.550(5)(b).
[12] 122 Nev. at 312-13, 130 P.3d at 662.
[13] Id. at 308, 130 P.3d at 659.
[14] Id. at 313, 130 P.3d at 662-63 (footnotes omitted).
[15] Metz v. Metz, 120 Nev. 786, 791, 101 P.3d 779, 783 (2004).
[16] Edgington v. Edgington, 119 Nev. 577, 582-83, 80 P.3d 1282, 1286-87 (2003).
[17] McKay v. Bd. of Supervisors, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986).
[18] Potter v. Potter, 121 Nev. 613, 616, 119 P.3d 1246, 1248 (2005).
[19] 1991 Nev. Stat., ch. 441, § 9, at 1184; 1991 Nev. Stat., ch. 590, § 6, at 1936.
[20] See Hearing on S.B. 609 Before the Assembly Comm. on Judiciary, 66th Leg., at 2 (Nev., June 12, 1991).
[21] Id. We note that in 2005, the Legislature amended NRS 432B.550(5) and expressly created a presumption that it is in a child's best interest to be placed with his or her siblings. See NRS 432B.550(5)(a). That the Legislature used the word "presumption" when it amended NRS 432B.550(5)(a), signifies that the Legislature was aware of the difference between the words "preference" and "presumption."
[22] Hearing on S.B. 609 Before the Senate Comm. on Judiciary, 66th Leg., at 2 (Nev., May 31, 1991).
[23] When resolving a child custody dispute involving a child's natural parent, the child's best interest is paramount, even though the parent may have a competing constitutionally protected interest in the parent-child relationship. See NRS 125.480(1) (stating that "the sole consideration of the court is the best interest of the child" when determining custody between parents in a divorce proceeding); NRS 128.105 (recognizing that "[t]he primary consideration in any proceeding to terminate parental rights must be whether the best interests of the child will be served by the termination"); NRS 432B.480(1)(b)(2) (providing that when making an initial custody determination in an abuse and neglect proceeding, the district court must determine whether there is reasonable cause to believe that it is in the child's best interest to be placed outside the child's home).
[24] This one-year search requirement was added to NRS 432B.550 in 1999. 1999 Nev. Stat., ch. 435, § 27, at 2041. During Assembly Committee on the Judiciary hearings on the statutory amendment, one participant observed that many foster children were languishing in the foster care system and needed to be placed in permanent homes as soon as possible. See Hearing on A.B. 158 Before the Assembly Comm. on Judiciary, 70th Leg., at 3 (Nev., February 25, 1999). And thus, the participant noted that "[r]elative searches should be completed within a year or less, to get the children out of the system sooner." Id.
[25] 122 Nev. at 308, 130 P.3d at 659.
[26] We vacate our order, entered on July 14, 2006, granting a stay pending the resolution of this petition.