**134 Nev., Advance Opinion 29**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PHILIP R.; AND REGINA R.,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
CYNTHIA N. GIULIANI, DISTRICT
JUDGE,
Respondents,
  and
STEPHANIE R.; JOEY R.; CLARK
COUNTY DEPARTMENT OF FAMILY
SERVICES; AND E.R., A MINOR,
Real Parties in Interest.

No. 73198

FILED

MAY 03 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

IN THE MATTER OF E.R., A MINOR.

No. 73272

CLARK COUNTY DEPARTMENT OF
FAMILY SERVICES; AND CLARK
COUNTY DISTRICT ATTORNEY'S
OFFICE,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
CYNTHIA N. GIULIANI, DISTRICT
JUDGE,
Respondents,
  and
PHILIP R.; REGINA R.; STEPHANIE R.;
AND JOEY R.; AND E.R., A MINOR,
Real Parties in Interest.

SUPREME COURT
OF
NEVADA

(O) 1947A

18-16764

Consolidated original petitions for writs of mandamus challenging a district court order concerning the placement of a minor child.

*Petitions granted.*

Steven B. Wolfson, District Attorney, and Tanner L. Sharp, Deputy District Attorney, Clark County,
for Clark County Department of Family Services and Clark County District Attorney's Office.

Mills, Mills & Anderson and Gregory S. Mills and Daniel W. Anderson, Las Vegas,
for Philip R. and Regina R.

Ford & Friedman, LLC, and Christopher P. Ford, Henderson,
for Stephanie R. and Joey R.

McFarling Law Group and Michael J. Burton and Emily M. McFarling, Las Vegas; Law Offices of Elizabeth R. Mikesell and Raymond E. McKay, Las Vegas,
for E.R., a minor.

---

BEFORE CHERRY, PARRAGUIRRE and STIGLICH, JJ.

## *OPINION*

By the Court, CHERRY, J.:

These consolidated original petitions for writs of mandamus challenge a district court order directing that the minor child be removed from her current adoptive foster home and placed with maternal relatives in Georgia based on a familial placement preference under NRS 432B.550(5). Because the placement order was entered after parental rights to the child were terminated, the parties dispute whether the



statutory preference for placement with a family member still applies. We conclude that a familial placement preference survives the termination of parental rights, but the placement preference is then governed by NRS 128.110(2) rather than NRS 432B.550(5). We further conclude that the maternal relatives had a reasonable excuse for their delay in seeking placement and they were entitled to a familial placement preference. However, the district court failed to enter factual findings or give adequate weight to the child's best interest or the Department of Family Services' discretion to determine placement in this case under NRS 128.110(2). Accordingly, we grant the petitions for writs of mandamus.

## FACTS AND PROCEDURAL HISTORY

In July 2015, Clark County Department of Family Services (DFS) removed one-month-old E.R. (the child) from the custody of her mother, Nellie S., because of neglect and placed the child in foster care. The juvenile division of the district court adopted a goal of reunification between Nellie and the child. DFS conducted a search for relatives with whom to place the child but the search proved unsuccessful. By August 2016, Nellie had not maintained visitation with the child or contact with DFS, and the district court changed the permanency goal to termination of parental rights and adoption. DFS initiated a separate proceeding in the district court to terminate Nellie's parental rights. In September 2016, the child was placed with Philip R. and Regina R. (the foster parents), who were an adoptive resource.

In October 2016, approximately 15 months after the child's initial removal, Nellie's first cousin Stephanie R. contacted DFS to request placement of the child with her and her husband Joey R. in Georgia (the maternal relatives). DFS initiated the process under the Interstate Compact for the Placement of Children for obtaining out-of-state placement

SUPREME COURT
OF
NEVADA

(O) 1947A

approval for the maternal relatives. The placement was approved in March 2017.

In the meantime, the district court in the termination proceeding entered an order terminating the parental rights of Nellie and any fathers claiming paternity of the child on February 18, 2017. The termination order decreed "that the custody and control of [the child] is vested in [DFS] with authority to place the minor child for adoption." The foster parents began the process for adopting the child.

In April 2017, DFS placed the matter on the district court's calendar to allow the maternal relatives to address the court regarding placement. An evidentiary hearing was held before a court master to determine whether the child's placement should be changed. DFS caseworker Kristina Quinlan testified about DFS's search for relatives and provided that DFS was unaware of Stephanie until she contacted DFS in October 2016. Quinlan also testified that the then-two-year-old child was extremely bonded with the foster parents, whom she regarded as her mom and dad, and it was not in her best interest to be placed with the maternal relatives because it would delay permanency. Taryn Lamaison, a DFS supervisor and a national child trauma trainer, observed the child with the foster parents and opined that removing the child from their care was not in the child's best interest. Lamaison explained that removing a child at a young age can affect brain development and result in negative coping mechanisms. She also testified that the child was already very clingy and attached to the foster parents, another move would constitute the child's fourth removal and cause long-term trauma, and she would expect the child to regress. If the child were to be removed, Lamaison described a gradual

transition to the new home that could lessen the trauma and would last several weeks and be accompanied by therapy.

The foster parents testified about the home, family, care, and educational development they had provided the child since September 2016, and that they were committed to an open adoption. Stephanie testified that although she knew Nellie had given birth to the child, she had never met the child and was unaware that the child was in protective custody until October 2016. Stephanie described the home and care she and Joey could provide the child, and she indicated her willingness to transition the child gradually in order to minimize the trauma.

Based on the testimony, the hearing master found that DFS should have located Stephanie earlier because DFS had contact with another relative who knew Stephanie, the maternal relatives demonstrated a reasonable excuse for the delay in requesting placement, and both couples would provide a good family and home for the child. The master found that although the child was "incredibly bonded" with the foster parents, the maternal relatives have a biological connection to the child and will likely end up with one of her siblings.[1] The hearing master found that the "family connection is the overriding consideration" and thus, the child should be placed with the maternal relatives, "despite the trauma that [the child] will experience." The hearing master recommended that the child be placed with the maternal relatives if they comply with "the trauma minimization transition as outlined by [DFS]." The foster parents and DFS filed objections to the hearing master's recommendation.

---

[1]The record indicates that Nellie was pregnant at the time of the evidentiary hearing and a child was born on April 24, 2017, and placed in protective custody shortly thereafter.

After hearing argument on the objections, the district court found that the master's findings were not clearly erroneous and affirmed the recommendation. The court concluded that the maternal relatives had a reasonable excuse for the delay in seeking placement of the child, and thus, the familial placement preference under NRS 432B.550 applied. The court further concluded that the hearing master had considered the child's best interest when making his decision and that the maternal relatives will likely end up with one of the child's siblings.

The foster parents and DFS both filed petitions for a writ of mandamus in this court. We consolidated the two cases and entered a stay of the placement decision.

## DISCUSSION

A petition for a writ of mandamus is the appropriate means to challenge a placement order entered in a proceeding under NRS Chapter 432B because the order is not appealable. *See Clark Cty. Dist. Att'y v. Eighth Judicial Dist. Court*, 123 Nev. 337, 342, 167 P.3d 922, 925 (2007). A writ of mandamus may be granted "to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion." *Id.*; *see also* NRS 34.160. Questions of law including statutory interpretation are reviewed de novo. *See Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 198, 179 P.3d 556, 559 (2008).

*Familial placement preference*

The district court applied the familial placement preference under NRS 432B.550(5), which governs placement of a child who is found in need of protection and is not permitted to remain with the parents. It provides that when determining the child's placement:

 

(a) It must be presumed to be in the best interests of the child to be placed together with the siblings of the child.

(b) Preference must be given to placing the child in the following order:

(1) With any person related within the fifth degree of consanguinity to the child or a fictive kin, and who is suitable and able to provide proper care and guidance for the child, regardless of whether the relative or fictive kin resides within this State.

(2) In a foster home that is licensed pursuant to chapter 424 of NRS.

NRS 432B.550(5). The foster parents and DFS contend that the familial placement preference under NRS 432B.550(5) no longer applies once parental rights are terminated. The maternal relatives and the child argue that the familial preference remains intact after termination of parental rights and does not end until the time of adoption.

We conclude that although the placement decision was initially governed by NRS 432B.550(5) when the child was removed from Nellie's care and remained in protective custody during the period of reunification services, once parental rights were terminated, a different placement preference provision under NRS Chapter 128 applied. When the district court enters an order terminating parental rights, NRS 128.110(2) provides:

If the child is placed in the custody and control of a person or agency qualified by the laws of this State to receive children for placement, the person or agency, in seeking to place the child:

(a) May give preference to the placement of the child with any person related within the fifth degree of consanguinity to the child whom the person or agency finds suitable and able to provide proper care and guidance for the child, regardless of whether the relative resides within this State.

> (b) Shall, if practicable, give preference to the placement of the child together with his or her siblings.

Here, the order terminating Nellie's parental rights was entered before the placement hearing and gave custody and control of the child to DFS with the authority to place the child for adoption. Thus, we conclude that NRS 128.110(2) governed the placement decision in this case and the district court erred in applying the placement preference under NRS 432B.550(5).

*Delay in requesting placement*

The foster parents and DFS assert that Stephanie's 15-month delay in coming forward and requesting placement, without a reasonable excuse, rendered the familial placement preference inapplicable. We disagree. In *Clark County District Attorney v. Eighth Judicial District Court*, we discussed both the agency's and the potential relatives' obligations regarding the child's placement outside the home. 123 Nev. 337, 167 P.3d 922 (2007). In that case, the child was placed in protective custody shortly after birth, and the father requested DFS to contact his mother and sister for possible placement. *Id.* at 339, 167 P.3d at 923-24. DFS contacted the grandmother but not the sister because the grandmother discouraged DFS from doing so. *Id.* at 340, 167 P.3d at 924. Shortly after the child was placed with an adoptive foster family, the sister contacted DFS about adopting the child, but she and her husband were somewhat undecided at that time and did not file a motion for placement until a year later, when the child was two years old and had bonded with the foster family. *Id.* at 340-41, 167 P.3d at 924. The district court granted the sister's motion for placement, and on writ review, we concluded that because the father had requested DFS to contact his sister, DFS should have pursued whether that placement was a viable option despite the grandmother's request. *Id.* at

 

347, 167 P.3d at 929. At the same time, the sister and her husband were on notice that the child was in protective custody and "had a concomitant duty to step forward and request custody, if they wished to have the child placed with them." *Id.* We held that

> [a] family member's failure to timely and definitively request custody of a child who has been placed in protective custody, *when that family member knows of the protective custody placement,* may ultimately either render the statutory familial preference inapplicable or influence the district court's determination of the child's best interest.

*Id.* (emphasis added). Although our decision in *Clark County* was interpreting NRS 432B.550, which requires that any search for relatives "be completed within 1 year after the initial placement of the child outside" the home,[2] NRS 128.110(2) similarly provides that "[a]ny search for a relative with whom to place a child pursuant to this subsection must be completed within 1 year after the initial placement of the child outside of his or her home." Thus, the explanation provided in *Clark County* is instructive in this case.

Here, the district court concluded that DFS should have located Stephanie earlier, and because she did not know the child was in protective custody, she had a reasonable excuse for the delay in seeking placement of the child. We conclude that the record supports the district court's decision in this regard. Therefore, the delay in seeking placement does not render the familial placement preference inapplicable.

---

[2]At the time *Clark County* was decided in 2007, the relevant language was contained in NRS 432B.550(5), but a 2011 legislative amendment to the statute moved the substance of that language to NRS 432B.550(6). *See* 2011 Nev. Stat., ch. 57, § 25, at 255-56.

 

*The child's best interest*

DFS and the foster parents contend that the district court misapplied the legal standard by relying too heavily on the familial preference and not adequately considering the child's best interest. We agree. In *Clark County*, we held that the child's best interest necessarily is the main consideration in the placement decision. 123 Nev. at 346, 167 P.3d at 928. We explained that when a child is initially placed with a non-family member, and interested relatives later come forward and timely request custody of the child, the court should first determine whether a familial preference exists. *Id.* The familial preference determination includes whether the relatives are sufficiently related to the child and are "suitable and able to provide proper care and guidance for the child." *Id.* (quoting NRS 432B.550(5)(b)); *accord* NRS 128.110(2)(a).

> Once the criteria for the statutory preference are established, the statute creates a familial preference, not a presumption, and the district court must then consider placing the child with the relatives. The placement decision ultimately rests in the district court's discretion, which must be guided by careful consideration of the child's best interest. In rendering its placement decision, the district court must make written findings with respect to any credibility issues and with regard to its ultimate conclusion regarding the child's best interest.

*Clark Cty.*, 123 Nev. at 348, 167 P.3d at 929. Although in *Clark County* we were interpreting the familial placement preference under NRS 432B.550(5)(b), we conclude that a placement decision under NRS 128.110(2) is similarly guided by the child's best interest. *Cf.* NRS 128.005(2)(c) ("The continuing needs of a child for proper physical, mental and emotional growth and development are the decisive considerations in

 

proceedings for termination of parental rights."); NRS 128.105(1) (stating that the primary consideration in any proceeding to terminate parental rights is the child's best interest).

In this case, the hearing master failed to give adequate weight to the child's best interest when he stated that "the courts and legislature have determined that when comparing bonding with biological, family connection, family connection is the overriding consideration and the family is where the child should be placed, despite the trauma that [the child] will experience with a fourth removal." After finding that both the foster parents and the maternal relatives were relatively equal in the home and life they could provide for the child, the master found the balance tipped in the maternal relatives' favor because of their biological connection and the likelihood one of the child's siblings would be placed with them. Absent from the master's recommendation are findings as to the child's best interest as required by *Clark County*, except for acknowledging that the removal will cause her trauma and ordering a trauma-minimization transition. And while the district court concluded in its written order that the hearing master had considered the child's best interest, the district court did not include written findings regarding the child's best interest.

*Discretion of the agency*

Finally, because the district court applied NRS 432B.550(5)(b), the district court did not consider the agency's discretion to determine the child's placement under NRS 128.110(2). NRS 128.110(2)(a) states that the agency "[m]ay give preference to the placement of the child" with a family member whom "the agency finds suitable and able to provide proper care and guidance for the child," while NRS 432B.550(5)(b) states that "preference must be given" to placement of the child with a suitable family

member. *Compare State v. Am. Bankers Ins. Co.*, 106 Nev. 880, 882, 802 P.2d 1276, 1278 (1990) (stating that "may" is permissive unless the legislative intent indicates otherwise), *with Washoe Cty. v. Otto*, 128 Nev. 424, 432, 282 P.3d 719, 725 (2012) ("The word 'must' generally imposes a mandatory requirement."). As for the sibling placement, NRS 128.110(2)(b) states that the agency "[s]hall, if practicable, give preference to the placement of the child together with his or her siblings," whereas NRS 432B.550(5)(a) provides that "[i]t must be presumed to be in the best interests of the child to be placed together with the siblings of the child." *See Practicable, Black's Law Dictionary* (10th ed. 2014) (defining "practicable" as "reasonably capable of being accomplished").

By applying the wrong statute, the court erroneously failed to consider DFS's discretion to give a preference to placement of the child with a relative and whether it was practicable to place the child with a sibling. Additionally, since the younger sibling's placement was not clear at the time of the underlying proceeding, the practicability of placing the siblings together requires more factual development. Accordingly, we conclude that the district court should conduct a trial de novo and consider the placement decision under NRS 128.110(2), and give appropriate weight to DFS's discretion and the child's best interest in this case.[3] *See In re A.B.*, 128 Nev.

---

[3]The master's recommendation also required the maternal relatives to provide proof of their familial relationship before the child would be placed with them. Because the familial relationship must be established before any placement preference applies, the district court must consider evidence of the familial relationship in the trial de novo. *See Clark Cty.*, 123 Nev. at 348, 167 P.3d at 929.

764, 770-71, 291 P.3d 122, 126-27 (2012) (providing that the master's findings and recommendation are only advisory and the district court may conduct a trial de novo); *see also* EDCR 1.46(g)(7).

## CONCLUSION

We conclude that the district court erred in applying the familial placement preference under NRS 432B.550(5) because NRS 128.110(2) is the applicable standard once parental rights are terminated. Further, the district court failed to set forth adequate factual findings concerning the child's best interest. Accordingly, we grant the petitions for writ relief and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate the order placing the child with the maternal relatives and to conduct a trial de novo and enter a decision consistent with the guidelines set forth in this opinion.[4]

_____, J.
Cherry

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

---

[4]In light of our disposition in these matters, we necessarily vacate the stay imposed by our order on July 13, 2017.