**141 Nev., Advance Opinion 42**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ERICKA DESTIN,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
DAVID S. GIBSON, JR., DISTRICT
JUDGE,
Respondents,
   and
MARY HANDWERKER-LAMASTER;
CLARK COUNTY DEPARTMENT OF
FAMILY SERVICES; AND A.R., A
MINOR CHILD,
Real Parties in Interest.

No. 89114



FILED

AUG 28 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order placing a minor child with relatives for adoption purposes.

*Petition denied.*

Pecos Law Group and Bruce I. Shapiro and Jack W. Fleeman, Henderson, for Petitioner.

Steven B. Wolfson, District Attorney, and Candice Saip, Chief Deputy District Attorney, Clark County,
for Real Party in Interest Clark County Department of Family Services.

25- 37656

Legal Aid Center of Southern Nevada, Inc., and Marina F. Dalia-Hunt, Las Vegas,
for Real Party in Interest A.R.

Mary Handwerker-LaMaster, Las Vegas,
Pro Se.

---

BEFORE THE SUPREME COURT, PICKERING, CADISH, and LEE, JJ.

*OPINION*

By the Court, PICKERING, J.:

This petition for extraordinary writ relief asks us to overturn the district court's placement of a minor child pending adoption. Parental rights over the child were terminated, and two birth relatives—a paternal aunt and a maternal grandmother—each sought to care for the child. In determining which placement was in the child's best interest, the district court considered Clark County Department of Family Services' (DFS) preference for placement with the aunt. DFS acknowledged that both relatives would give the child a loving home and appropriate care but recommended the aunt's home where the child could maintain a sibling-like relationship with her cousin. Consistent with DFS's recommendation, the district court placed the child with the aunt.

When parental rights over a child are terminated and the child is placed in DFS's custody, the district court must consider DFS's preference when determining whether a placement is in the child's best interest. In this case, the district court had two good placement options and properly took DFS's preference into consideration in choosing between them. The

district court did not manifestly abuse its discretion in deciding to place the child with the aunt. We therefore deny writ relief.

## I.

This case concerns minor child A.R. In 2022, when A.R. was a newborn, Clark County Department of Family Services removed A.R. from her parents' custody due to neglect and abuse. After A.R.'s removal, DFS spoke with A.R.'s paternal aunt, Mary Handwerker-LaMaster (Aunt Mary), and A.R.'s maternal grandmother, Ericka Destin (Grandma Ericka), about the possibility of placing A.R. with one of them. Grandma Ericka and her daughter (A.R.'s mother) were not on speaking terms at the time and, to facilitate contact between A.R. and her mother, DFS placed A.R. with Aunt Mary. Grandma Ericka did not object and helped with A.R.'s care.

For the next year or so, A.R. lived with Aunt Mary and eventually began staying with Grandma Ericka on weekends. Grandma Ericka wanted to continue playing a role in A.R.'s life even if A.R.'s mother's parental rights were eventually terminated. Thus, Grandma Ericka informed DFS that she was an adoptive resource for A.R. and sought to modify her placement. The court recognized Grandma Ericka as a person who "has a special interest" under NRS 432B.457.

The district court held an evidentiary hearing on A.R.'s protective custody placement. During the hearing, Grandma Ericka testified as to why she would be suitable for A.R.'s placement and why the placement should be modified. Following the hearing, the court entered an order modifying A.R.'s placement. The court created "two placements of equal standing," such that A.R. would now spend one week with Aunt Mary, followed by one week with Grandma Ericka (instead of only weekends), on an alternating basis. In the court's view, A.R. had spent time with both Aunt Mary and Grandma Ericka "for a period sufficient to be well bonded

to both." It found that A.R. had thrived in both placements and that, according to the best interest factors, Aunt Mary and Grandma Ericka were "equally situated." Though the court found that joint adoption or joint custody would "likely [be] untenable," it noted that if either Aunt Mary or Grandma Ericka eventually adopted A.R., the other person should be entitled to post-adoption contact.

Parental rights were later terminated, and the district court proceeded to conduct an evidentiary hearing on A.R.'s post-termination placement. At the outset of the hearing, the court stated that it had "already made extensive best interest findings in this case" and cautioned the parties against revisiting them. The court resolved to limit the evidence in the post-termination placement hearing to "any material change in the earlier evidence." The court also explained that, because this was now in the post-termination phase, it would "weigh" DFS's recommendation in making its decision.

In addition to her own testimony, Aunt Mary offered the testimony of A.R.'s DFS permanency worker. The DFS worker confirmed that "both placements are appropriate" and that "[b]oth families really love [A.R.]." She further explained that, while both Aunt Mary and Grandma Ericka could meet the child's needs, A.R. needs "one set of parents that are going to take over the parental role." In her opinion, "when things were going well for [A.R.]," Aunt Mary and her husband (A.R.'s uncle) were fulfilling that role. She also highlighted one key difference between the two placements: A.R. had already become "very, very bonded" to her cousin (Aunt Mary's minor child). According to the DFS worker, this cousin is like a sibling to A.R.—they had "that kind of relationship." She cautioned that it would be difficult to separate A.R. from her cousin. Aunt Mary called

Grandma Ericka as a witness during her case. Grandma Ericka offered no additional evidence.

The court selected Aunt Mary as A.R.'s placement as the parties moved toward adoption. It found that Aunt Mary and Grandma Ericka "remain equally situated to provide care for [A.R.] in all ways," listing specific examples, including "love and affection," "ability to serve as a role model," "provide for material needs," and "provide health care." Citing NRS 128.110, the court stated that it considered DFS's preference for A.R.'s placement. While DFS had acknowledged that both Aunt Mary and Grandma Ericka love and are bonded with A.R., the court concluded that DFS supported placement with Aunt Mary because DFS favors "a traditional nuclear family of two parents, *other children in the home*, and grandparents." (emphasis added). It noted that DFS supported Grandma Ericka remaining "a strong and constant figure" in A.R.'s life as her grandmother. The parties had negotiated a Post Adoptive Contact Agreement (PACA) through mediation, which the court's order incorporated. The court ordered DFS to implement the PACA's terms once it was signed, which provided Grandma Ericka with "alternating weekend visits" and "2 weeks of vacation in the summer."

The court further explained that it gave DFS's "recommendation regarding placement its due weight." It concluded that DFS's recommendation "outweighs any placement priority [that] degrees of consanguinity may create" and that "[a]ll other things being equal, the Court is swayed by [DFS's] preference to place the child with [Aunt Mary] for purposes of adoption." It also rejected DFS's contention that it "could not override [DFS's] placement preference without a finding [that DFS] made an inappropriate placement, violated statutes, or a potential

SUPREME COURT
OF
NEVADA

(O) 1947A

5

placement's legal rights." The court clarified that it had the authority to decide A.R.'s placement "over [DFS's] recommendation."

Grandma Ericka now petitions this court for a writ of mandamus directing the district court to vacate its order placing A.R. with Aunt Mary and to hold an evidentiary hearing on which placement would be in A.R.'s best interest.[1]

## II.

## A.

Mandamus may issue "to compel the performance of an act which the law especially enjoins as a duty resulting from an office." NRS 34.160; see Nev. Const. art. 6, § 4. The writ may issue if the district court has "*manifestly* abused [its] discretion or acted arbitrarily or capriciously." *Walker v. Second Jud. Dist. Ct.*, 136 Nev. 678, 680, 476 P.3d 1194, 1196 (2020). A "mere error in judgment" does not warrant mandamus relief. *Id.* at 680, 476 P.3d at 1197 (internal quotation marks omitted). Instead, the error must be such that "the law [has been] overridden or misapplied" or "the judgment exercised [was] manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *Id.* at 680-81, 476 P.3d at 1197 (internal quotation marks omitted).

Writ relief is available if the petitioner lacks "a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170. "A petition for a writ of mandamus is the appropriate means to challenge a placement order entered in a proceeding under NRS Chapter 432B because

---

[1]Though styled as an alternative petition for mandamus or prohibition, prohibition is not in play because the petition does not contest the district court's jurisdiction. *See* NRS 34.320 (prohibition addresses proceedings a tribunal lacks jurisdiction to conduct).

the order is not appealable." *Philip R. v. Eighth Jud. Dist. Ct.*, 134 Nev. 223, 226, 416 P.3d 242, 246 (2018). Because no other remedy is available to Grandma Ericka through the ordinary course of the law, we exercise our discretion to consider the writ petition. *See State v. Eighth Jud. Dist. Ct. (Armstrong)*, 127 Nev. 927, 931, 267 P.3d 777, 779 (2011) (explaining that, assuming the dispute qualifies for writ relief, the decision to entertain a writ petition lies within this court's sole discretion).

### B.

NRS Chapter 432B governs DFS's initial removal of a child from their parents, the protective custody action, and the child's placement while in protective custody. *See* NRS 432B.550. During the protective custody action, DFS's goal is typically to reunify the child with their parents or, if reunification becomes infeasible, the termination of parental rights. *See* NRS 432B.393. If the parents' rights are terminated, the child is placed in DFS's custody and NRS Chapter 128 then governs the child's placement. *See* NRS 128.110. At this point, DFS's goal is to seek a more permanent placement for the child, usually with the hope that the placement will choose to adopt the child—thus removing the child from DFS's custody and ending the child's status as a ward of the state. *See, e.g., In re Parental Rts. as to A.G.*, 129 Nev. 125, 132-33, 295 P.3d 589, 593-94 (2013) (discussing shift in goal post-removal); *In re Parental Rts. as to A.J.G.*, 122 Nev. 1418, 1424-25, 148 P.3d 759, 763-64 (2006) (same); *In re Parental Rts. as to J.L.N.*, 118 Nev. 621, 627, 55 P.3d 955, 959 (2002) (discussing the goal of finding a permanent placement rather than having the child remain in foster care indefinitely). Once an adoptive resource for the child has been found, NRS Chapter 127 governs the adoption phase.

## C.

Grandma Ericka asserts the district court manifestly abused its discretion in placing A.R. with Aunt Mary after A.R.'s parents' rights were terminated. She first contends the district court improperly relied on DFS's placement recommendation and this court should overrule *Philip R.*, 134 Nev. at 226-28, 416 P.3d at 246-47, to the extent it requires the district court to "rely" on DFS's recommendation. Next, Grandma Ericka argues that the court failed to hear and consider appropriate evidence or to make sufficient written findings as to A.R.'s placement and that the court improperly prioritized a "nuclear family," which she maintains is contrary to Nevada public policy.

### 1.

NRS 128.110(1) provides that once parental rights are terminated, the child must be placed in the custody of "some person or agency qualified by the laws of this State to provide services and care to children, or to receive any children for placement." The "agency, in seeking to place the child," must give preference to sibling placements and may give preference to individuals who are within the fifth degree of consanguinity to the child. NRS 128.110(2).

In *Philip R.*, we concluded that the district court erred by failing to consider the agency's discretion in determining a child's placement under NRS 128.110(2). In that case, the child was removed from her biological parents' custody and placed with nonrelative foster parents. *Philip R.*, 134 Nev. at 223-24, 416 P.3d at 244-45. More than a year after the child's removal, the child's maternal relatives asked that the child be placed with them. *Id.* at 224, 416 P.3d at 245. DFS argued against switching the placement as not in the child's best interest. *Id.* at 225, 416 P.3d at 245. Despite this, the hearing master found that "family connection is the

Supreme Court
of
Nevada

(O) 1947A

overriding consideration" and ordered that the child be placed with the maternal relatives. *Id.* Over DFS's continued objections, the district court affirmed the hearing master's recommendation, applying NRS 432B.550's familial placement preference. *Id.* at 225-26, 416 P.3d at 245-46. We granted writ relief and directed the district court to vacate its order and conduct a new hearing. *Id.* at 230, 416 P.3d at 249. Because parental rights had been terminated before the placement decision, we concluded that the district court erred by applying NRS 432B.550 instead of NRS 128.110(2) and, in doing so, "erroneously failed to consider DFS's discretion to give [or not to give] a preference to placement of the child with a relative." *Id.* at 230, 416 P.3d at 248.

Grandma Ericka urges us to overrule *Philip R.* to the extent the decision requires a district court to honor an agency's placement preference. But Grandma Ericka overreads *Philip R.* As *Philip R.* emphasizes, the child's best interest is the paramount concern when determining placement. *Id.* at 229, 416 P.3d at 248. NRS 128.110(2) gives the agency *custody* of the child after termination of parental rights. Thus, the agency is tasked with providing for the "care, control, and maintenance" of the child. *Custody*, *Black's Law Dictionary* (12th ed. 2024) (explaining what custody generally means in the family law context). NRS 128.110(2) further provides the agency with discretion in determining the appropriate placement for that child while exercising its custody. While the district court is not bound by the agency's placement preference, it must give due consideration to that preference in deciding placement.

The agency does not make the final call regarding placement, because it remains the district court's duty to ensure placement is in the child's best interest. *Clark Cnty. Dist. Att'y v. Eighth Jud. Dist. Ct.*, 123

Nev. 337, 346, 167 P.3d 922, 928 (2007); *see also Davis v. Ewalefo*, 131 Nev. 445, 451, 352 P.3d 1139, 1143 (2015) (stating that "[i]n making a child custody determination, the sole consideration of the court is the best interest of the child" (internal quotation marks omitted)). Therefore, while the district court is required to consider the agency's placement preference, it must do so only as part of its determination of what placement is in the child's best interest. Because *Philip R.* did not misstate the law in this regard, we do not overrule it.

Here, the district court considered DFS's placement preference in determining which placement was in A.R.'s best interest. It would have been an abuse of discretion for it to do otherwise. In its order, the court stated that it would give DFS's recommendation "due weight." And it implicitly concluded that DFS's recommendation would serve A.R. better than placing A.R. with the relative of closest consanguinity. In doing so, the court acknowledged that it could override DFS's recommendation if it thought the recommendation disserved A.R.'s best interest. In sum, the district court did not manifestly abuse its discretion by *considering* DFS's recommendation; doing so was consistent with applicable law.

2.

Grandma Ericka contends that the district court did not make sufficient findings on A.R.'s best interest for the purpose of the post-termination placement and that the district court improperly prioritized a nuclear family when making its placement determination. We disagree.

In determining a post-termination placement, the district court must "consider the placement decision under NRS 128.110(2) and give appropriate weight to DFS's discretion and the child's best interest." *Philip R.*, 134 Nev. at 230, 416 P.3d at 248. The district court "must make written findings with respect to any credibility issues and with regard to its

ultimate conclusion regarding the child's best interest." *Id.* at 228-29, 416 P.3d at 247-48 (quoting *Clark Cnty. Dist. Att'y*, 123 Nev. at 348, 167 P.3d at 929). Written findings are required because of "the importance of the district court's child placement decisions as well as the inherent difficulties in reviewing matters within the district court's discretion." *Clark Cnty. Dist. Att'y*, 123 Nev. at 348, 167 P.3d at 929; *accord Philip R.*, 134 Nev. at 228-29, 416 P.3d at 247-48.

The district court's order included the written findings needed to support its decision. The court incorporated its findings from the previous placement order and recognized that both Aunt Mary and Grandma Ericka are well-situated to care for A.R. and that A.R. would likely thrive in either environment. It considered DFS's preference for placement with Aunt Mary, noting that DFS considered both placement options suitable but, to the extent a tie breaker was required, Aunt Mary would be the slightly better option because she could offer A.R. a "nuclear family" situation. The court found DFS's preference reasonable and was not persuaded that it should deviate from DFS's preference for placement with Aunt Mary.

The district court did not improperly prioritize a nuclear family. The evidence demonstrated that A.R. had a bonded, sibling-like relationship with her cousin, Aunt Mary's child. As the DFS permanency worker testified, A.R. benefited from her relationship with her cousin and likely would suffer if the two were separated. Thus, the evidence before the district court was tailored toward A.R. and her specific circumstances and does not demonstrate an unfair preference for a traditional nuclear family.

Grandma Ericka's remaining challenges do not support writ relief. While she argues that the district court abused its discretion in not

SUPREME COURT
OF
NEVADA

(O) 1947A

hearing additional evidence at the placement hearing, she did not proffer such evidence in district court, so the argument is waived. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (explaining that a failure to preserve an issue before the district court means the matter has been waived). Citing NRS 127.030(1), she next argues that the district court's "nuclear family" preference disregarded joint adoption as a possibility. This argument, too, was waived because it was not made in district court. Finally, we find no abuse of discretion in the district court's considering evidence from the protective custody proceedings at the placement hearing. Grandma Ericka does not support this argument with legal authority. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (observing it is the party's "responsibility to cogently argue, and present relevant authority" that supports the party's claims). These proceedings are often fluid, and evidence regarding a placement before termination of parental rights will likely still be relevant to placement post-termination. The law does not preclude the judge who heard evidence when making the previous placement decision from considering such evidence in later proceedings.

### III.

This was a close case. The district court faced a choice between two loving and fit homes for the child. In choosing which placement option was in the child's best interest, it properly considered DFS's placement preference. When a district court is entrusted with discretion on an issue, we will not grant mandamus relief unless the district court overrode or misapplied the law or its exercise of discretion was manifestly unreasonable. *See Walker*, 136 Nev. at 680-81, 476 P.3d at 1197. Because the record does not support that the district court misapprehended the law or manifestly abused its discretion in making its placement determination,

writ relief is unwarranted.  We therefore deny the petition for extraordinary writ relief.

_Pickering_
_____, J.
Pickering

We concur:

_____, J.
Cadish

_____, J.
Lee