IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF K. A. J., A MINOR PROPOSED PROTECTED PERSON. | No. 78217 |

CAROL PARKER,
Appellant,
vs.
MICHAEL GRANT; AND JENNIFER
GRANT,
Respondents.

FILED

SEP 3 0 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order granting permanent guardianship over K.A.J., a minor child. Second Judicial District Court, Washoe County; Linda M. Gardner, Judge.

K.A.J.'s biological parents, Kimberly Lopes and Danny Lyle Jensen II, pleaded guilty to possession of methamphetamines and heroin with intent to sell, while Lopes was pregnant with K.A.J. Respectively, the two faced minimum sentences of 63 months and 120 months, and therefore knew they would not be able to care for the infant after her birth. Accordingly, both parents granted temporary guardianship of K.A.J. to Jensen's sister, Autumn O'Tool, before K.A.J.'s birth. The parties agree that they originally planned for O'Tool to immediately meet with K.A.J.'s maternal grandmother, appellant Carol Parker, outside the state border to

20-35902

transfer K.A.J. to Parker.[1] But, after Ms. O'Tool obtained possession of K.A.J., Parker repeatedly cancelled, postponed, or otherwise changed plans to transfer the child.

O'Tool lacked capacity to care for K.A.J. long-term. And, Jensen had previously suggested that his half-sister, respondent Jennifer Grant, might be an appropriate potential guardian for the infant. Thus, according to O'Tool, she advised Lopes, Jensen, and Parker that if Parker continued to be unable to pick up K.A.J., O'Tool would ask Grant to step in as guardian. And after plans for Parker to pick up the child again fell through, O'Tool did, in fact, ask Grant. Grant agreed to take over guardianship and took K.A.J. to the Grant family home in Utah.

Two days after Grant picked up K.A.J., a notarized letter from Lopes arrived at O'Tool's house, purporting to terminate O'Tool's temporary guardianship of K.A.J., and granting guardianship to Lopes's brother, Jason Lopes. O'Tool subsequently had notarized a document in which she purported to transfer her guardianship of K.A.J. to the Grants. At this point, relations between the parties deteriorated—Jensen, Lopes, and Parker reported to police and child welfare services that K.A.J. had been kidnapped, and the Grants responded with claims of harassment by the three and Jason Lopes. In the meantime, various law enforcement agencies conducted numerous well checks on K.A.J. at the Grants' home, all of which indicated that she was cared for "very well" and up to date on her vaccines.

_____

[1]Though Lopes denies it, the record reflects that the exchange was necessary because Parker had an outstanding warrant in Nevada and would not have been able to pass the requisite background check to pick up K.A.J. directly from the hospital.

Competing petitions for permanent guardianship of K.A.J. followed, one each in Nevada and Utah. After initially granting guardianship to the Grants, the Utah court conferred with the Nevada district court and declined jurisdiction. The Nevada district court then held a hearing on permanent guardianship. After hearing testimony from all the parties, as well as a court-appointed investigator and attorney, the district court granted permanent guardianship to the Grants. Parker appeals.

*Standard of review*

Where, as here, more than one person other than a parent seeks guardianship of a child, a district court is required to consider certain factors and ultimately determine which placement would be in the child's best interests. NRS 159A.061(3), (6) (laying out factors to guide a district court's inquiry); NRS 159A.061(9) ("In determining whether to appoint a guardian of the person or estate of a proposed protected minor and who should be appointed, the court must always act in the best interests of the proposed protected minor."); *see also In re Guardianship of D.R.G.*, 119 Nev. 32, 40, 62 P.3d 1127, 1132 (2003)[2] (noting that a court's "paramount consideration is the child's best interests"). And, in its written order the district court is required to make express factual findings supporting that determination, tying those factual findings to the child's interests. *See Davis v. Ewalefo*, 131 Nev. 445, 451-52, 352 P.3d 1139, 1143 (2015) (imposing this requirement in the analogous context of a child custody

[2]The legislature enacted NRS 159A.061 in 2017 to make technical corrections to its predecessor, NRS 159.061. 2017 Nev. Stat. ch. 172, §§ 46, 220, at 828-30, 910. This court's precedent interpreting NRS 169.051 is therefore relevant because, for the purposes of this discussion, the two statutes are substantively similar.

determination). But the district court enjoys "broad discretionary powers" in making such determinations, such that we review only to ensure that district court's decision was based upon "appropriate reasons." *In re D.R.G.,* 119 Nev. at 37, 62 P.3d at 1130 (quoting *Locklin v. Duka,* 112 Nev. 1489, 1493, 929 P.2d 930, 933 (1996)).

*The district court did not abuse its discretion by finding placement with the Grants was in K.A.J.'s best interests*

In favor of Parker's motion, the district court considered the required factors, as relevant, namely: that K.A.J.'s biological parents had nominated Parker as guardian, *see* NRS 159A.061(6)(a) (requiring that a court consider a parent's nomination of a guardian); that Parker has familial preference as K.A.J.'s grandmother, *see* NRS 159A.061(6)(c) (requiring that a court consider family relationship to minor); and that K.A.J.'s independent attorney had recommended K.A.J. be placed with Parker "pending [the court's] determination of [her] 'suitability,'" *see* NRS 159A.061(6)(e) (requiring that a district court consider a minor attorney's independent recommendation). The district court further noted that K.A.J.'s now adult half-sibling resided with Parker.

But, in favor of the Grants, the district court noted that Parker was unable to care for K.A.J. for the first three weeks of her life due to Parker's limited financial means, inflexible work schedule, and the demands placed upon her by caretaking for her own adult son with cancer. The district court further noted Parker's live-in son's previous heroin addiction and related arrests (which were specific concerns of K.A.J.'s attorney), her limited financial means, and the crowded living conditions in her apartment. The district court further discussed the likelihood of parental reunification, and specifically the likely extended length of the guardianship given the potential sentences K.A.J.'s parents faced, both

notably longer than the two years Parker indicated she had originally contemplated being K.A.J.'s guardian.

The district court then specifically tied these findings to K.A.J.'s best interests, noting her "substantial and time-sensitive" needs as an infant and soon-to-be toddler, a "high-energy being[ ] need[ing] full-time care." Weighing these considerations, the district court held that K.A.J.'s interests were better served by placement with the Grants. And, in light of our deferential standard of review, we cannot say that the district court abused its discretion by so finding. *See Ewalefo*, 131 Nev. at 450, 352 P.3d at 1142.

*The reasons given by the district court were appropriate*

Parker argues that the district court should not have considered her prior criminal history, her live-in son's prior criminal history and drug addiction, her financial stability and circumstances of employment, and K.A.J.'s parents' prospective sentences and respective history as parents. All of these are considerations not enumerated by NRS 159A.061(3) and (6), but those sections only offer a nonexhaustive list of factors to be considered "without limitation" and "among other factors." NRS 159.061(3), (6); *see Ewalefo*, 131 Nev. at 451, 352 P.3d at 1143. Thus, while the district court was not statutorily required to consider all the facts noted above, it was entirely appropriate for it to do so. *See Locklin v. Duka*, 112 Nev. 1489, 1496, 929 P.2d 930, 935 (1996) (considering the likely degree of stability and security in the child's future with the parent as part of the child's interests); *Arnold v. Arnold*, 95 Nev. 951, 952, 604 P.2d 109, 110 (1979)) (noting,

without disapproval, that the district court weighed the mother's "financial problems" against other factors when making a custody determination).[3]

Parker also argues that the district court failed to give proper weight to factors that, in her view, should have conclusively weighed against the Grants. Specifically, Parker points to NRS 159A.061 and argues she is entitled to guardianship because: K.A.J.'s biological parents had nominated Parker as guardian; Parker has familial preference as K.A.J.'s grandmother; and, K.A.J.'s independent attorney had initially recommended that K.A.J. be placed with Parker. Beyond these specific statutory considerations, Parker further argues that she should be granted guardianship because: a placement with Parker would better facilitate potential parental reunification, and Parker already has guardianship over K.A.J.'s biological sibling. But no single factor Ms. Parker notes is itself determinative; rather, they are each subject to the court's overall consideration of the child's best interests. *In re Estate & Guardianship of Winkleman*, 11 Nev. 87, 88 (1870) (establishing that parental nomination is still subject to the child's best interests); *Clark Cty. Dist. Att'y v. Eighth*

---

[3]With regard to the parties' respective monetary means, we note that the instant case does not involve custody by the biological parents, where the result might be different. *See In re Schultz*, 64 Nev. 264, 269, 181 P.2d 585, 587 (1947) (noting that "[o]rdinarily the law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and worldly advancement may be offered in the home of another," but that this principle is not at play where parents have relinquished their right to custody of their child by writing or otherwise (internal quotation marks omitted)), *superseded by statute on other grounds as recognized by Las Vegas Sun, Inc. v. Franklin*, 74 Nev. 282, 290-91, 329 P.2d 867, 871 (1958).

*Judicial Dist. Court*, 123 Nev. 337, 344, 167 P.3d 922, 926 (2007) (stating in the context of permanent placements that "the child's best interest continues to be the overarching standard to be used by the district court in making placement decisions, even those involving the familial preference"); *In re Guardianship of D.R.G.*, 119 Nev. 32, 39, 62 P.3d 1127, 1132 (2003) ("The child's welfare takes precedence over [a parent's] parental rights."). And, the record establishes that the district court weighed all the considerations Ms. Parker cites and still held that K.A.J.'s placement with the Grants was in her best interests. With due deference to the district court, we cannot say that this was an abuse of discretion—the record contained evidence that the Grants have better resources, more professional flexibility, no criminal history, and fewer caretaking duties. *See In re D.R.G.*, 119 Nev. at 37, 62 P.3d at 1130.

*The district court gave due consideration to the facts surrounding K.A.J.'s transfer to the Grants*

We note finally, what Parker calls "the inauspicious circumstances under which the Grants obtained custody of K.A.J. in the first place," as she describes them, "without permission, without contacting the parents, and under color of a forged guardianship form." According to Parker, the district court failed to appropriately weigh these circumstances. True, for the reasons discussed above, the district court could have considered evidence of those circumstances to the extent that they would be probative of K.A.J.'s best interests. NRS 159A.061. And, the district court did discuss the facts surrounding the Grants' obtaining temporary physical custody of K.A.J: "[Lopes] stated that she terminated [ ] O'Tool's temporary guardianship August 9, 2018, and [ ] O'Tool gave the minor to the Grants on August 11, 2018"; "When the plans for [ ] Parker to pick the child

up . . . kept falling through, the Grants came from Utah to assist and picked up the minor child."

The district court was not required to determine, beyond this, whether the perhaps questionable transfer had legal effect, only whether its circumstances reflected so negatively on the Grants as to change the district court's assessment of K.A.J.'s best interests. *See* NRS 159A.061(9) ("[T]he court must always act in the best interests of the proposed protected minor."). And the record contained evidence that contextualized the transfer, for instance: Parker had initially declined guardianship, and O'Tool had advised her half-brother she did not have capacity to take on care of a newborn; thus, Mr. Jensen had suggested the Grants as potentially appropriate guardians.[4]

The record further indicates that any issues with K.A.J.'s transfer would not have been immediately apparent to the Grants. There was evidence that O'Tool told the Grants she would contact K.A.J.'s biological parents and have the appropriate form notarized and sent to the Grants. Moreover, O'Tool testified that she did, in fact, contact Lopes, Jensen, and Parker prior to the transfer. O'Tool further testified that she attempted to execute and have notarized what she believed was the appropriate form to transfer guardianship to the Grants, before learning that Lopes had terminated her guardianship of K.A.J. And, added to this evidence of apparent good faith on the part of O'Tool and the Grants is that Lopes and Jensen had left their other children in the care of relatives, including O'Tool, without any formal guardianship paperwork or planning.

---

[4]Parker argues that evidence of Jensen's statements to this effect were inadmissible hearsay, but Jensen himself testified that this conversation had occurred.

In sum, this court "presume[s] that the district court properly exercised its discretion in determining the best interests of the child," *Flynn v. Flynn*, 120 Nev. 436, 440, 92 P.3d 1224, 1226-27 (2004), and the record presented supports this presumption. We "will not substitute [our] own judgment for that of the district court" when the district court's order is supported by substantial evidence. *In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 795, 8 P.3d 126, 129 (2000). Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:    Chief Judge, The Second Judicial District Court
Hon. Linda M. Gardner, Senior Judge
Greenberg Traurig, LLP/Las Vegas
Ballard Spahr LLP/Las Vegas
Woodburn & Wedge
Barbara Buckely
Anne R. Traum
Kelly H. Dove
Washoe District Court Clerk